State *v.* Kallaher.

## THE STATE *vs.* THOMAS J. KALLAHER.

Third Judicial District, New Haven, Jan. Term, 1898.   ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

In a prosecution for theft, evidence that the accused threatened to burn
  *M's* dwelling-house with its inmates, unless *M* would comply with
  his demand for money, is relevant and admissible as tending to
  prove that *M* parted with his money because of a reasonable fear
  of immediate bodily injury to himself and family.

Whether the person who thus parts with his property was in actual
  fear, and if so, whether that fear was reasonable, are questions of
  fact to be determined in each particular case by the language of
  ꞏ the threat, the conduct of the accused, and the circumstances sur-
  rounding the property owner.

In the present case the accused, during the same conversation and as
  part of it, threatened that he would bring a civil suit against *M* and
  attach all his property.   *Held* that evidence of this threat was
  admissible in connection with and as introductory to the more
  serious threat, although not a ground for a charge of larceny.

The trial court charged the jury that if the accused, knowing he had
  no claim to the money, obtained possession of it openly, but by
  deception, artifice or fraud, and subsequently converted it to his
  own use, they would be justified in finding that the taking was
  with felonious intent and that larceny had been committed.   *Held*
  that while this statement, detached from the context, was open to
  criticism, the instructions as a whole were correct, intelligible and
  sufficient for the guidance of the jury.

In the charge the trial court said to the jury that theft was included in
  the crime of robbery, but that in its opinion the proof in the pres-
  ent case would not warrant a conviction for the latter offense.   *Held*
  that while this remark was irrelevant, it afforded the accused no
  just ground of complaint.

[Submitted on briefs January 20th—decided March 2d, 1898.]

INFORMATION for theft, brought to the Superior Court in
New Haven County and tried to the jury before *George W.
Wheeler*, *J.;* verdict and judgment of guilty, and appeal by
the accused for alleged errors in the rulings and charge of
the court.   *No error.*

The information contained three counts: the first charg-
ing the theft on February 23d, 1897, of two hundred dollars

from Ellen F. Munson; the second, the theft on the 8th day of March, 1897, of eight hundred dollars from Ellen F. Munson; and the third, the theft on the 8th day of March, 1897, of eight hundred dollars from George O. Munson. At the conclusion of the testimony the attorney for the State disclaimed a conviction on the first and second counts, and claimed a conviction upon the third count only. The jury found the accused guilty on the third count, and not guilty on the first and second counts.

Upon the trial of said cause the State offered evidence to prove and claimed to have proved, that in June, 1896, said Munson employed the accused as a farm hand; that he continued substantially all of the time in the employ of said Munson as such farm hand, from that time until the 21st of February, 1897, when he was discharged on account of his intemperate habits; that in August and September, 1896, there was some talk between the accused and Munson and his wife about going into the chicken business together, but the parties never arrived at any agreement; that the accused at the time he was discharged in February, 1897, claimed that Munson was indebted to him for his work; that Munson did not in fact owe the accused anything at that time, and so stated to the accused; that the accused thereupon threatened said Munson and his wife that if they did not settle with him and pay him what he demanded, he would cause everything they had to be attached and taken from them, but offered to settle with them and give a receipt in full for $200; that the accused continued to threaten more or less, if they did not settle with him and pay the $200, and on February 23, 1897, Mrs. Munson gave him $200 in full settlement of all claims whatsoever, but the accused never gave a receipt in full and would not do so; that thereupon the accused left, but again returned on the 3d day of March and for the first time spoke to Mrs. Munson about having a further claim upon her and her husband by reason of their failure to go into the chicken business with him, and that they must pay him to settle such claim the sum of $800, and that if they did not do so he would cause all of their property

to be attached and taken from them, and their house to be burned and destroyed, so there would be nothing left but chimneys to tell the tale; that he came again to the Munson house about 9 o'clock in the evening of March 11th, in a somewhat intoxicated condition, when Mr. and Mrs. Munson and their two children were ill and unable to leave the house; that the accused renewed his claim for the $800, informing Mrs. Munson that he knew they had the money in the house, and threatening at first that if they did not pay the money to him immediately he would cause everything they had to be attached, saying that he had been to New Haven that afternoon and seen his lawyer; that the papers had been drawn and were in the hands of sheriff Spiegel, who would be out there the first thing in the morning to attach everything they had, but if they paid him the money that night he could stop it; that afterwards, however, he threatened that if they did not pay over the money to him immediately he would burn and destroy their house, and that there would be no one left to tell the tale; that Mrs. Munson inquired of him, "What do you mean, that you will burn us up with it?" and that he replied that he did; that he repeated these threats until after eleven o'clock, when Mrs. Munson, who was crying during the t me of the threats and because of them, finally called her husband down from upstairs and told him in the presence of the accused what he had been saying to her; that thereupon the accused repeated the threats in the presence of Mr. Munson, also remarking, referring to his courage and ability, that "if he was in a crowd he didn't care for anything but a knife, he would cut his way through;" that during the time of the threats, as aforesaid, Mrs. Munson had endeavored to persuade him to wait until morning, but he refused to consent to any delay and insisted that he must have the money then, that night; that finally Mr. Munson, through fear of his (the accused's) burning and destroying life, as he had threatened, took $800 from his safe and handed it to his wife, in the presence of the accused, that she might count it; that thereupon the accused took it from Mrs. Munson's hands and remained in the house

about fifteen minutes, when he left, it then being about 12 o'clock, midnight; that thereupon the accused left the house with the money and went to New Haven.

The defendant offered evidence to prove and claimed to have proved, that while working for said Munson he was dissatisfied with his position, and told Munson that he should leave; that thereupon Munson, about September 1st, represented to him that if he would stay he, Munson, would go into the poultry business with him that winter, and give him an interest therein; that thereafter the defendant remained with Munson until about February 18th, 1897, and during said time rendered services, negotiated for the purchase of materials, and assisted in the construction of a building for Munson, in preparation for the carrying on of said business as agreed upon; that about the 18th day of February, 1897, Munson refused to carry out the agreement to go into business with the defendant; that the defendant thereupon threatened to bring suit against said Munson and to attach his property for failure to carry out said agreement, and that said George and Ellen F. Munson then promised the defendant that said George Munson would pay him $1,000 damages for the breach of his contract to go into said business, as aforesaid; that on the 23d day of February, 1897, the said George and Ellen F. Munson paid the defendant $200 in partial settlement of the claim which he had against them aforesaid, and that on said day the defendant gave to the said Ellen F. Munson a simple receipt for said $200, but refused to give a receipt in full, though requested to do so; that on the first day of March, 1897, the defendant came to the house of the Munsons to collect the additional $800 agreed on, intending to go to Hartford that night; that the said George and Ellen F. Munson promised him then that he should be paid the $800 the following Thursday if he would stay over with them, and he assented; that thereafter the defendant was taken sick and the said Ellen F. Munson became sick, and it was agreed that the payment of said sum of money should be postponed until Tuesday, the 11th of March; that thereafter, on the evening of the said 11th day of March, the

defendant demanded said sum of $800, and stated that if the sum was not paid immediately suit would be brought by him and the property and house of the said Munson would be attached, and that the papers in the lawsuit had been placed in the sheriff's hands, which last statement the accused admitted was untrue; that influenced by fear of the defendant, caused by said statements, and in order to prevent their property and the house from being attached, the said George Munson handed the sum of $800 to the said Ellen F. Munson, who, in his presence, immediately delivered it to the defendant.

During the trial of the case Ellen F. Munson, a witness in behalf of the State, was asked the following question with reference to the occurrences of the evening of March 11th: "Now state what happened there about that time." The witness answered: "He demanded the $800, and I told him I had not got it. He said: 'It is in the house; if you don't give it over, the sheriff will be here and attach.' He said if we didn't there would be nothing but chimneys left to tell the tale. I asked him if he meant the building would be burned, and he said, 'Yes.'" Said witness was thereupon asked this question: "You may state if before this evening, as to which you have testified, the accused said anything to you in regard to what he would do, if you didn't give over the $800, about the buildings." The witness answered: "He did, the 3d day of March." She was then asked to state what he said, and answered: "He asked me if I was going to give him the $800. I told him I hadn't got it. He spoke then: 'Then there will be nothing but chimneys left, and no one to tell the tale,' and I asked him if he meant he would burn us up, and he said, 'Yes.'"

To this evidence counsel for the accused objected, "unless the threat to burn was expected to be carried out immediately, if the money was not paid;" and that threats were only admissible if made at the immediate time that the money was paid. To the ruling of the court admitting this evidence counsel for the accused excepted.

The same witness and also George O. Munson, as witnesses

in behalf of the State, testified that at the time the $200 was paid, and at the time of the payment of the $800, the accused threatened to bring a civil suit and attach the property of the said Munsons, and threatened that if they did not pay said sums the sheriff would be there and attach all their property. To this evidence counsel for the accused objected, upon the ground that a threat to enforce a claim by civil suit is never ground to support a conviction for theft or for robbery. To the ruling of the court admitting this evidence counsel for the accused excepted. These rulings are among the alleged errors assigned in the appeal to this court.

The appellant further alleges that the court erred in stating the following in its charge to the jury: "If the possession of property of another to which the taker has no claim, be obtained openly, but by deception, artifice or fraud, designed by the taker to secure the possession of the goods of another to which he has no claim, and no honest belief in such a claim, and they be subsequently converted to the use of the taker, the jury would be justified in finding that the taking was with felonious intent and the crime of larceny committed." And in stating in its charge to the jury the following: "It has been said to you that if this case presented before the jury is anything, it is a case of robbery. But the crime of larceny, gentlemen, is necessarily included in the crime of robbery; so that if it were true that this case presented upon the evidence were a case of robbery, the jury would be justified upon such proof in finding the accused guilty of larceny. But the evidence seems to me clear enough to warrant me in saying to you that I do not think the proof would admit of a conviction of robbery in this case."

In its charge to the jury the court made the following statements in addition to those previously quoted: "While the felonious intent may be found from a secret taking, it may be found from an open taking, provided, for instance, that it may be by deception, artifice, or fraud. If the title to the property as well as the possession of the property be obtained by deception, artifice, or fraud, this will not be larceny, because the owner parted with the title as well as the

possession.   The crime may be obtaining goods under false pretenses, but it is not larceny. . . . Threats which will be regarded as effective, in the eye of the law, to cause a degree of fear depriving the owner of property of his consent to its taking, will be threats of personal violence, either danger to life, or great bodily harm. . . . The compulsion of the payment of a valid claim, or one believed to be valid, by threat to bring civil suit and attach, thus causing fear and inducing, as a result of the fear, the payment of the. money, is not larceny.   The compulsion of the payment of money not owed, and which the taker knows is not owed, by threats to bring civil suit and attach, causing fear under the influence of which the money is paid, is not larceny.   The threat made which induced the fear which caused the money to be paid, must be a threat which it was apprehended would speedily be put in execution, and under the influence of a fear of its speedy execution the money was paid over.   The money must have been paid under the influence. of fear of great bodily harm to be speedily caused by the taker.

" To summarize, gentlemen, some of these claims, and perhaps the vital ones : If the jury find that Kallaher secured this money having an honest claim to it, or honestly believing he had such a claim, he should be acquitted.   If the jury find that Kallaher secured this money by a threat to bring a civil suit, or by representations that the papers had been placed in the hands of the sheriff, and this was the only threat, no matter whether he believed in his claim or not, he should be acquitted.   If the jury find that the threat was to do great bodily harm to the Munsons, and that this caused fear on their part, if the fear was not that the threat would be speedily or immediately executed, Kallaher should be acquitted. If, on the other hand, the jury find that the evidence establishes beyond a reasonable doubt that Kallaher secured this money as claimed, without a right to it, and without believing that he had a right to it, and by a threat to endanger the lives of the Munsons or to do them great bodily harm, which threat the Munsons believed would be speedily executed, and induced fear on their part, under the influence of

that fear that the threat would be speedily executed during that night, they paid over the money as charged, then the accused would be guilty of the crime as charged. . . . It is for the jury to determine as a question of fact what the threat was. Was the fear of the Munsons, if there was fear on their part, that there would be a speedy or immediate execution of this threat by Kallaher? That, the jury must determine as a question of fact from the evidence."

*Roger S. Baldwin, Edward J. Maher* and *Martin Conlon,* for the appellant (the accused).

The court erred in admitting the testimony of the witness Ellen Munson, tending to prove that the defendant, at the time the sum of $800 was paid him, threatened that he would burn the house of the Munsons. 2 East's P. C., 712, 715, 721, 731. The threat of an attachment was inadmissible in evidence. It was introduced, as the record shows, to prove a taking of property against the consent of the owner, and a specific objection was made to its introduction for that purpose; and though the court afterwards told the jury to disregard it, yet, as the whole case was tried upon this theory, the testimony had so entered into and biased the jurors' minds, that they could not at that late moment efface it from their recollections. *Bussey* v. *The State,* 71 Ga. 100 ; *Harmon* v. *Harmon,* 61 Me. 227 ; *Wolfe* v. *Marshall,* 25 Mo. 167 ; Poll. & W., Possession, 219, 220. In *State* v. *Daubert,* 42 Mo. 246, irrelevant testimony was admitted, and the court in its charge ordered the jury to disregard it. On appeal, it was held too late, the higher court saying: " They had heard it detailed; it had poisoned their minds and its effects could not be erased from their memories." See also *State* v. *Mix,* 94 Pa. St. 114. The court erred in charging the jury as to the effect of obtaining possession of property by stratagem or artifice and subsequently converting it to the taker's use. *Haley* v. *The State,* 49 Ark. 154 : *Loomis* v. *People,* 67 N. Y. 327. The charge in relation to the question of robbery, was also prejudicial to the defendant. Where threats are relied upon to prove a taking of property against the consent of

the owner, the threats must be of the same degree of constructive violence to sustain a conviction for larceny, as would be required for robbery. *Rex* v. *Wood*, 2 Leach C. C. 833–839. See also *State* v. *Graff*, 66 Ia. 483.

William H. Williams, State's Attorney, and *Alfred N. Wheeler*, for the appellee (the State).

The trial court was correct in its rulings upon testimony. There can be no question as to the admissibility of the threats during this evening between nine o'clock and eleven, under the circumstances; and as to the threats made on the 3d of March, it was simply a question of their weight with the jury; of course, the more remote the less weight would be likely to be attached to them; but the remoteness would not render them inadmissible. The threats to bring the suit and attach the property were but introductory to the threats to burn the house and destroy the lives of the family. The accused was abundantly protected against any conviction on account of the threats of attachment alone. The charge of the court in relation to obtaining possession of property by deception, artifice or fraud, etc., was correct. *State* v. *Fenn*, 41 Conn. 590; 1 Whart. Cr. Law, §§ 891, 915, 971. The charge of the court in which it is stated that the crime of larceny is necessarily included in the crime of robbery, and that if it were true that in this case the evidence proved a case of robbery, yet that the jury would be justified, upon such proof, in finding the accused guilty of larceny, is a correct statement of the law. *Hickey* v. *State*, 23 Ind. 21; *State* v. *Jenkins*, 36 Mo. 372; *People* v. *Jones*, 53 Cal. 58; 1 Whart. Cr. Law, § 858, and cases cited. If property is delivered up by one person to another through fear of personal injury, or any threat calculated to produce terror, the crime of robbery has been committed. Rosc. Cr. Ev. p. 954; *Rex* v. *Harmon*, 2 East's P. C. 736; 1 Whart. Cr. Law, § 851; *Rex* v. *Toplin*, 2 East's P. C. 712; *Rex* v. *McGrath*, L. R. 1 C. C. 205; *Rex* v. *Lovell*, L. R. 8 Q. B. 185; *Rex* v. *Hazell*, 1 Cox C. C. 597; *State* v. *Howerton*, 58 Mo. 581. If one deliver up property to another under fear of a threat

to burn his house, it is robbery.   *Rex* v. *Astley*, 2 East's P. C. 729; *Rex v. Simons*, ibid, 731; *Rex* v. *Brown*, ibid, 721.

HALL, J.   The only objection to the admissibility of the evidence offered by the State in proof of the threats of the accused to burn the house of the Munsons, which seems to be urged by counsel for the accused in their brief submitted to us, is that it should not have been received "unless the threat to burn was expected to be carried out immediately." The record shows that evidence was offered by the State to prove that these threats, made by the accused when he was somewhat intoxicated, to Mr. and Mrs. Munson in their own house between 9 and 12 o'clock at night, when both they and their children were ill, Mrs. Munson being too ill to leave the house, were that if they did not pay over the money to him immediately he would burn and destroy their house, and that there would be no one left to tell the tale, and that he meant to burn them up in it; that he refused to consent to any delay, but insisted that he must have the money then, that night; and that finally Mr. Munson, through fear that the accused would burn and destroy life as he had threatened, paid him the $800.

To constitute the crime of larceny the taking must not only be felonious, but without the consent of the owner.   But a felonious taking with the consent of the owner, when the giving of such consent is not a voluntary act, but is the result of actual fear induced by threats calculated to excite a reasonable apprehension of bodily injury, is, in the eye of the law, a taking without the owner's consent.   1 Wharton's Crim. Law, §§ 850, 851, 852 and note 5; 2 Bishop on Crim. Law, § 1169; 2 Greenleaf on Evidence (13th ed.), 193. Whether such apprehension of danger existed, and, if so, whether it was a reasonable apprehension, are questions of fact, and must be determined in each particular case by the language of the menaces of the accused, his actions, and the circumstances surrounding the person who thus parts with his property.   *Morris* v. *Platt*, 32 Conn. 75-83.   Clearly, the evidence offered by the State of the threats made by the

accused in the present case tended to prove that Munson parted with his $800 because of a reasonable fear of immediate injury to himself and to his family. It was for that reason admissible. The jury were instructed by the court that if the fear was not that the threats to do great bodily injury to the Munsons would be speedily or immediately executed, the accused should be acquitted.

The threat of the accused that he would bring a civil suit and attach all the property of the Munsons, was a part of the statement in which he threatened to burn the building and its inmates. It was admissible as a part of that conversation, and is introductory to the proof of a more serious threat. It nowhere appears upon the record that the court held that the obtaining money by threats to commence a civil action and to attach property, could constitute larceny. On the contrary, the court distinctly charged the jury that if they found that "Kallaher secured this money by a threat to bring a civil suit, or by representations that the papers had been placed in the hands of the sheriff, and this was the only threat, no matter whether he (Kallaher), believed in his claim or not, he should be acquitted."

It is claimed by counsel for the accused that the following statement made by the court in its charge to the jury, was irrelevant and harmful to the defendant: "If the possession of property of another to which the taker has no claim, be obtained openly, but by deception, artifice, or fraud, designed by the taker to secure the possession of the goods of another to which he has no claim, and no honest belief in such a claim, and they be subsequently converted to the use of the taker, the jury would be justified in finding that the taking was with felonious intent and the crime of larceny committed."

The court in this part of its charge was instructing the jury how a criminal intent might be proved, and not as to what constituted a taking without the owner's consent. The State was required not only to prove that the accused obtained this money by threats of personal violence, but with a felonious intent which existed at the time of the unlawful

taking. The language quoted must be read in connection with that which precedes and follows it, and when so read it will be seen that the court was pointing out to the jury that when the taking was without the consent of the owner, the jury would be justified in finding that it was with felonious intent, even though it was not secret, but open, if the accused without having any claim to the property had thus openly obtained possession of it by deception, artifice or fraud.

In this case there was no claim that the owner had by deception or fraud been induced to part with the mere possession of the money, independently of the ownership, as was claimed regarding the note in the case of *State* v. *Fenn*, 41 Conn. 590. When Munson parted with the $800 he did so not because he supposed he was asked to part with the possession of the bills only. He understood fully that the accused demanded not the mere possession of the money, but the money itself.

The portion of the charge complained of, when considered by itself, is open to the criticism that the jury might have understood from this language that if they found that the accused had no just claim to this money, nor an honest belief in the claim which he made to it, and that Munson parted not with the possession only but with the ownership of the $800, because of the false and fraudulent representations of the accused that he had commenced a civil action against Munson and that the papers were in the hands of the sheriff to attach all his property, they might upon those facts not only find a taking with felonious intent, but a taking without the consent of the owner, and convict the accused of the crime of larceny.

But when we regard the entire charge of the court, we think the jury could have placed no such construction upon this language. In the two sentences immediately preceding the one under discussion, the court said to the jury: "If the title to the property as well as the possession of the property be obtained by deception, artifice, or fraud, this will not be larceny, because the owner parted with the title as well as the possession. The crime may be obtaining goods under

false pretences, but it is not larceny." Again, in its final summary to the jury of the questions of law involved in the case, the court, as has been before observed, said: "If the jury find that Kallaher secured this money by a threat to bring a civil suit, or by representations that the papers had been placed in the hands of the sheriff, and this was the only threat, no matter whether he believed in his claim or not, he should be acquitted." The court concludes its discussion of the questions of law, by stating upon what facts the jury might convict the accused of larceny, namely, upon proof that Kallaher secured the money "without a right to it and without believing he had a right to it, and by a threat to endanger the lives of the Munsons or to do them great bodily harm, which threats the Munsons believed would be speedily executed, and induced fear on their part, and under the influence of that fear that the threat would be speedily executed during that night, they paid over the money as charged."

It seems to us clear that no jury of ordinary intelligence could have understood from the charge of the court that they might convict the accused of larceny upon finding that he obtained the money in question by false and fraudulent representations, and without finding it proved that he made the alleged threat of great bodily injury to the Munsons; and that therefore the accused was not prejudiced by the language of the court in this part of the charge.

The last claim made in the brief of counsel for the accused is, that the court erred in stating to the jury that the crime of larceny was included in the crime of robbery, but that in the opinion of the court the proof in this case would not admit of a conviction of the crime of robbery.

The ground of the defendant's complaint seems to be the remark of the court that the evidence would not warrant a conviction of robbery. The court correctly stated to the jury the elements of the crime of larceny, which was the only charge in the information, and what facts were required to be proved to support a conviction of that offense. The duty of the jury to convict or acquit depended upon the proof or the failure to prove these facts, and not upon the question

of whether such facts, if proved, were sufficient to sustain the charge of robbery. That inquiry was irrelevant.

We have only noticed those reasons of appeal which are discussed by counsel for the accused in their brief.

There is no error.

In this opinion the other judges concurred, BALDWIN and HAMERSLEY, Js., with hesitation.