## STATE vs. WILLIAM S. FENN.

An officer of a bank with which a note of the defendant had been left for collection, called on the defendant with the note for payment. The defendant asked to be allowed to see the note, and on its being handed to him walked out of the room with it and secreted or destroyed it. In a prosecution against him for theft, it was held, on a motion of the defendant for a new trial, that the court below properly charged the jury that if the defendant obtained possession of the note with a felonious intent the act was theft.

Also that the court properly charged that the intent to deprive the owner of his property and to gain some advantage to himself, constituted a felonious intent.

The "taking," in theft, need not necessarily be secret and without the knowledge of the owner, but may be done openly, by deception, artifice, fraud or force.

The note was described in the information as "a certain promissory note, dated November 6, 1872, signed by the defendant, for the payment for value received, to W or order, of $2,300 on the 1st day of May, 1872, a more full description of which is to the attorney for the state unknown." Held to be sufficiently described.

The note was in fact for $2,300 and interest and all taxes. Held not to be a fatal variance, all that is required being such substantial accuracy as shall make the identity of the note unquestionable, and protect the accused from another prosecution for the same offence.

And held that the defendant, who wrongfully took the note and destroyed it, should not be permitted to say that it was not ·described with the utmost particularity.

State v. Fenn.

The note was payable to W or order, and was by W endorsed to H, and by H endorsed in blank, and it had been left by H at a bank for collection. The information described the note as the property of H. Held that the fact of its being endorsed by H did not necessarily show that H was not still the owner, and that the judge below, after instructing the jury that the note must have been delivered by W to H, properly left it to them to say from all the evidence whether W had delivered the note to H, and whether H was still the owner.

And held that the judge properly charged the jury that the state was bound to prove the note to be of some value, but that they were not limited to direct evidence on this point, but might consider any evidence from which the value might be inferred.

INFORMATION for theft; brought to the Superior Court in New Haven County, and tried to the jury, on the plea of not guilty, before *Loomis, J.*

The information charged that at the town of New Haven, on the 3d day of May, 1873, William S. Fenn of said town, with force and arms, one certain promissory note, dated November 6th, 1872, signed by the said Fenn, for the payment of twenty-three hundred dollars, for value received, to F. J. Whittemore or order, on the first day of May, 1873, and by the said F. J. Whittemore endorsed and by him delivered to Henry A. Warner, of said New Haven, a more particular description of which is to the attorney for the state unknown, of the goods and chattels of said Henry A. Warner, and of the value of twenty-three hundred dollars, feloniously did steal, take, and carry away, contrary to the statute in said case made and provided, and against the peace.

Upon the trial the State offered in support of the prosecution the evidence, among others, of *William T. Bartlett*, who testified as follows: On the 30th of April, 1873, I was and ever since have been the treasurer of the Union Trust Company of New Haven, a company engaged in banking business, and on that day Henry A. Warner left with me as such treasurer a note for collection, the proceeds to be placed to the credit of Warner if collected, but if not paid on demand the note to be protested in the usual manner. The note was taken possession of by the defendant, and he did not return it to me. He stated that he had placed it in the hands of a friend, and subsequently he stated that he had used it in a .

water closet. The last I saw of the note the defendant took it. I think a correct description of the note is as follows : " $2,300. New Haven, Nov. 6th, 1872. On the first day of May, 1873, I promise to pay F. J. Whittemore or order twenty-three hundred dollars, with interest semi-annually, and all taxes assessed on said sum, value received. *W. S. Fenn.*" [To the introduction of this evidence the defendant objected, on the ground of variance as to payment of semi-annual interest and taxes. The State claimed that there was no variance, as at most it was a redundancy of proof and not of allegation, and also that as the defendant had destroyed the note it was not competent for him to object that it was not described with exactness. The court overruled the objection and admitted the evidence.] The note was endorsed " Pay H. A. Warner or order. *F. J. Whittemore.*" Also endorsed " *H. A. Warner.*" [This was excepted to by the defendant, as the information did not state how the note was endorsed, but the court overruled the exception and admitted the evidence.] I had sent notice to Fenn of the time the note fell due, and, on the 3d day of May, 1873, the note not being paid, I took it, being a notary, to demand payment and protest it. Having the note I called on Fenn at his office in the Glebe building, New Haven. I said to Fenn, " I came to make an official demand for the payment of this note," at the same time holding the note in my hand. Fenn said, " You wish it paid, do you ?" I said, " I do." Fenn then said, " Do you wish it paid to-day ? " I said, " Certainly, it is due to-day." Fenn then said, " Let me see the note." I placed the note in his hand as he was sitting down. He took it and turned it over and examined the endorsements, as was customary, and then asked me, ".What is the amount of interest due ? " I replied that I had not computed it, understanding that he was not ready to pay it. Fenn then said, " Well, figure the interest." I then looked about for a bit of paper and commenced to figure the interest, the note still being in his hand ; he had moved off some little distance from me at that time. While I was busy computing the interest, Fenn said, " I would like to speak to a friend a moment," and

State *v.* Fenn.

stepped out the door. I waited as I supposed a sufficient time for his return, and he not appearing I stepped to the door leading from the room at the top of the stairway leading to the street. I stopped there for a short time, when Fenn appeared coming from an inner apartment, I could not tell where. He was about to pass me and go down the stairs to the street, and said, " Step into my office a moment and I will step out and get the money," and also said something about going to the bank in that connection. I said that he had better leave the note with me while he went out. He then said he had handed the note to a friend, or placed it in the hands of a friend. I said to Fenn that he could not leave the building till- he produced the note. He turned and went into his office without any opposition. I then went to the foot of the stairs and saw a policeman, and requested him to sit in the room occupied by Fenn till my return. I went out and consulted the authorities and returned to Fenn's office, and said to him that I did not wish to make him any trouble ; if he would produce the note, that was all I required. Fenn said he could not produce it, as it was in the hands of a friend. I said to him, " Can you produce the note if you go to see your friend ? " He said he could see. I said to him, " You certainly know whether you can produce the note or not, if you go to your friend." He said he could see. Not getting any satisfaction I went out and put the matter in the hands of John W. Alling, city attorney. Mr. Alling drew up the necessary papers and went to Fenn with me. He said to Fenn that he had got himself into trouble and he had better produce the note. Fenn said he could not do so. Alling then asked Fenn what he had done with the note. He replied that he went to the water closet and used it. Alling said it was an important matter and he had better go to the water closet and see if it could not be found, and I believe they went. Fenn left the room in company with the officer. They soon returned and reported that they had examined the water closet without having found the note. I then left the matter in the hands of the city attorney. and returned to my place of business.

*Cross-examined.* The original note was not before me when I made the copy I have here. I made it first from recollection, but afterwards took the copy from the record of the mortgage given to secure this note as recorded in the office of the town clerk. The note was secured by mortgage of real estate. My recollection of the indorsements on the back of the note is as follows: "Pay H. A. Warner or order. *F. J. Whittemore.*" Further endorsed, "*Henry A. Warner.*" I went to Fenn's office about three o'clock. He was sitting at his table, but not engaged at the time I think. It was probably only two or three minutes after I first spoke to him that I handed him the note. When he asked me to figure the interest, I think I sat down in the same chair he vacated when he took the note. I found the scrap of paper myself to figure the interest. He soon left the room. After I commenced figuring I don't know what he was doing; he went out in two or three minutes; he had the note in his hands from the time I handed it to him till he left the room. He had his hat on when I went in and all the time while I was there. I do not know the location of the water closet where he went.

*John W. Alling* testified as follows:—I went to Fenn's office with a warrant which I drew up upon Mr. Bartlett's complaint. I was well acquainted with Fenn. I said to him, "I am sorry that you took that note; what made you do it?" Fenn said that there had been a fraud played on him by Whittemore, and he took it. I replied, "Suppose there was, that don't affect Mr. Bartlett or Mr. Warner, who took it before it was due." Fenn said, "I do not know about that." I then said, "It is a pretty serious thing, it seems to me; in my judgment it is a state's prison offence, to take a note in that way." Fenn then said, "I will take care of that." Then I said to Fenn, "Any how, it is nonsense, because your taking the note has not done you any good, for your liability is the same as if you had not got it." Fenn said, "Is that so? I supposed, if the note was gone, the whole thing was gone, or they could not do anything more about it." I think I also said, "You can't pay it in that way." I then

told Fenn he had better give up the note. He then said, "I haven't it and cannot give it up any way. To tell the truth about it, the note is destroyed." I asked him what he had done with it, and told him that he had told Bartlett that he had given it to a friend. He said that when he left the office he went to a water closet and put it in the bowl. I suggested that he had better look for it, as it was possible it was not lost. He said probably there was no use in it, but he would try. He and the officer went and came back, and said it was not there. I did not say that I was a prosecuting officer; nothing said about it.

*Cross-examined.* I think I first said, "I am sorry, Mr. Fenn, you took that note, and why did you do it?" He did not say he had taken it, but said Whittemore had wronged him in the transaction out of which the note grew. I knew nothing about any suits then pending. I told him it could not affect Warner or Whittemore, and he said he did not know about that.

*George S. Selleck* testified as follows:—I am a policeman at New Haven. While standing on the street corner near the building in which the accused had his office, Mr. Bartlett spoke to me and said he would like to have me come up stairs. I did so, and Mr. Bartlett said Mr. Fenn had taken a note from him and he wished me to remain there in the office till he returned. He went away and after awhile returned. Bartlett then asked Fenn what he had done with the note, and why he did not return it? Fenn said he had put it in the hands of a friend and he could not return it. Bartlett went out soon after and came in with Mr. Alling and an officer, and then Mr. Alling had a conversation with Fenn; he told Fenn he thought he had got himself into trouble by taking the note, and after some conversation that I do not remember, Fenn said he had taken it to the water closet and had destroyed it. At the suggestion of Mr. Alling, Fenn and I went to the water closet and examined it, but could not find the note. We then returned to Fenn's office and Alling handed me a warrant to arrest Fenn and I arrested him.

*William S. Fenn* (the accused) testified in his own behalf as follows:—The note was given by me to F. J. Whittemore for $2,300 as part of the consideration on a trade with Whittemore in exchanging land. I agree to the statement of Bartlett and Alling as to what took place at my office. When Bartlett handed me the note I had no intention of destroying it. The water closet is situated at the west end of the hall, on the same floor with my office. I had the note in my hand, and as I rose from the seat when I threw the paper into the bowl, the note went with it. This note was secured by mortgage.

*Cross-examined.* I had no intention about the matter when I first took the note from Bartlett. After I had looked at the note and the indorsements and had asked Bartlett to compute the interest, I had no intention respecting it, and all that I did with the note was an accident, and I meant to have the jury so understand.

The witness further in chief and on cross-examination testified to facts tending to show that Whittemore had defrauded him in the exchange of land, for which the note was given, and introduced other evidence to the same point and claimed to have proved the fraud. The State, on the other hand, to rebut the claim of fraud, offered evidence to prove, and claimed to have proved, that the exchange of land was a fair transaction, and perfectly understood by Fenn, and that there was no fraud whatever.

The foregoing is all the evidence offered on the trial, except evidence on the one hand to show the fraud, and on the other to rebut the claim of fraud, which evidence is not material to any questions now made in the case.

The defendant upon the foregoing evidence requested the court to charge the jury as follows:

1. That the defendant was entitled to an acquittal because a full and particular description of the note was known to the state attorney at the time of instituting the prosecution, and was not given in the information. But the court did not so charge the jury.

2. That the defendant was entitled to an acquittal because

the description of the note offered in evidence and the endorsement were each materially variant from the note and endorsement described in the information. But the court did not so charge.

3. That the defendant was entitled to an acquittal because there was no legal evidence introduced to prove that Warner was the owner of the note, but on the contrary his blank indorsement on the note showed that the title was not in him; and because there was no evidence that Whittemore ever delivered or endorsed the note to Warner or sold it to him.

The court did not so charge the jury, but charged on this point as follows: "The State is bound to prove, and the jury must be satisfied from the evidence beyond a reasonable doubt, that the note in question, when taken by the defendant, was the property of Henry A. Warner, as alleged in the information. The note, it is conceded, was originally given by the defendant to Whittemore and payable to his order; it must therefore be proved that the title to the note passed from Whittemore to Warner and that when taken it was the property of Warner. It is alleged in the information that Whittemore endorsed and delivered it to Warner, and evidence to satisfy you of this fact is essential. A note payable to order does not pass by delivery alone, but must also be endorsed. The State claims to have proved that Warner was the owner of the note, from the testimony of the defendant that he gave the note to Whittemore; that on the back of the note were the words 'Pay Henry A. Warner. *F. J. Whittemore*;' and from the testimony of Bartlett, that he received the note from the hands of Warner, with instructions to collect it and place the proceeds to Warner's credit, and if not collected to protest it; and it will be for the jury to determine from all the evidence in the case whether Warner owned the note at the time it was taken by the defendant. If you are not satisfied from the evidence that Warner was such owner, it will be your duty to return a verdict of not guilty. The fact that the note was endorsed in blank by Warner will not prevent it from being his property, provided

such endorsement was made merely for purposes of collection."

4. The defendant further claimed that the court should charge the jury that he was entitled to an acquittal, because there was no evidence introduced to prove that the note at the time the same was taken by the defendant was of any value whatever.

The court did not so charge the jury, but instructed them as follows:—"The State is bound to prove that the note was of some value, and if not proved, the jury must acquit the defendant. The jury are not restricted to direct evidence showing the value, but may consider any evidence, though indirect, from which the value may be naturally inferred."

5. That the court should instruct the jury that the act of taking, to constitute theft, must be private, or designed by the taker to be private, and without the knowledge of the owner or the public, and further, that by the term "felonious intent" as applied to theft was meant an intent to deprive the owner of his property privately without his knowledge or the knowledge of the public, and to convert the same to the use of the taker in such a manner as to prevent the owner from knowing where his property was or who had taken it.

The court did not so charge the jury, but instructed them as follows: "It is essential that the evidence convince the jury beyond a reasonable doubt that the defendant took this note as alleged with a felonious intent. Without a specific and actual intent to steal there can be no theft, and the taking, though wrongful, would be only a trespass, and the act of taking the note and this felonious intent to steal must both concur in fact and in point of time. This felonious intent must be to deprive the owner of his property on the one hand, and on the other the taker must intend some gain or advantage to himself, in distinction from a mere act of mischief to another. But it is not legally essential to constitute the crime of theft that the taking be secret or in the night, though the jury will bear in mind that such circumstances are most pregnant evidence to manifest the intent. If the taking was secret or designed to be so, or was under cover of

State *v.* Fenn.

darkness, it would be the strongest kind of evidence to show a felonious intent, and if on the other hand the taking was open, or in the presence of the owner or of other persons, it would be equally strong evidence that the taking was without a felonious intent and therefore a mere, trespass; but these things are matters of evidence for the jury, who alone are to find the intent upon consideration of all the circumstances; and if instead of a clandestine or private taking, or a taking under cover of darkness, designed by the taker to conceal his outward act, there be a taking by strategem, artifice or fraud, designed by the taker to conceal his mental purpose, which is precisely the same in both cases, then the act is the same and the crime the same in both cases."

6. The defendant further claimed that the court should instruct the jury that the act of taking, accompanied by all the circumstances stated by the witnesses on the part of the State, as matter of law did not constitute theft. But the court did not so instruct the jury.

7. Also that the claim of the State, that the possession of the note was obtained by fraud, was not supported by the evidence; that the defendant asked Bartlett to let him see the note, and that thereupon Bartlett handed Fenn the note, and that all the subsequent acts and declarations of Fenn after he had obtained possession of the note had no bearing upon the question of fraud in obtaining it.

But the court did not so charge the jury, but instructed them as follows:

" It will be for the jury to decide what Fenn meant by the request to Bartlett to let him see the note. Did he intend thereby to have Bartlett understand that he wanted the mere temporary possession of the note, merely to see if it was genuine, to examine endorsements and signature, to compute the interest, or to pay it, while at the same time his real purpose was in that way permanently to deprive Bartlett of the note and to steal it? The request to see the note might have an honest or a dishonest purpose, and to enable the jury to determine the real purpose and meaning of that request, the subsequent acts, false declarations and conduct of the accused,

may be received and considered by the jury, although it is obvious that if specific acts of falsehood, artifice or fraud could be shown prior to the delivery of the note by Bartlett to Fenn, the evidence would be more weighty."

8. The defendant further claimed that the court should instruct the jury that they would not be justified in finding the defendant guilty, although at the time he received the note from Bartlett he intended to convert it to his own use, unless they should also find that he took it without the consent of Bartlett or that he obtained Bartlett's consent to his taking it by falsehood, or by force, or by fraud.

Upon this point the court instructed the jury as follows:

"In order to find the defendant guilty the jury must find that at the time he asked Bartlett to let him see the note, he had a felonious intent existing in his mind, and if the jury should find that he obtained possession of the note from Bartlett by strategem, artifice or fraud, and that he falsely pretended to him that he wanted to see the note for the mere purpose of computing the interest or paying it, when in fact he had no such design, but intended to deceive and did deceive him, and his real intent, then formed and existing in his mind, was to get hold of the note and deprive Bartlett, or the owner, permanently of it, with the intent thereby to secure a pecuniary advantage to himself, then the jury might find him guilty of theft."

The jury returned a verdict of guilty, and found the value of the stolen note to be twenty-three hundred dollars. The defendant thereupon moved for a new trial for errors in the rulings and charge of the court, and upon the ground that the verdict was against the evidence in the case.

*H. B. Munson* and *W. C. Robinson*, in support of the motion.

*First.* The verdict was against the evidence. To sustain the verdict the State must show that the defendant—1st, did steal, take and carry away—2d, with felonious intent—3d, the particular note described in the information—4th, of the value of $2,300—5th, of the goods of Henry A. Warner.

Not one of these propositions was sustained by legal evidence.

1. He did not steal. The note was voluntarily " placed in his hands." Theft implies a private, secret taking. Webster's Dict., *Theft;* 2 Swift Dig., 341 ; 2 East P. C., 687 ; *Regina* v. *Gardner,* 9 Cox C. C., 253 ; *Rex* v. *Sullens,* 1 Moody C. C., 129 ; 1 Bishop Crim. Law., 260. If we adopt the modern doctrine of constructive theft—" a delivery obtained by fraud," we say that he did not obtain possession of the note by force or fraud. The State must prove the fraud ; it is not to be presumed. Fenn must have uttered or acted a falsehood to induce the delivery of the note or else there could be no fraud. He simply said, " Let me see the note." Suppose he had said, " Let me take the note." There is neither fraud nor falsehood in these requests. If he had said give me the note and I will give you my check or the cash, then the delivery of the note might be said to have been obtained by fraud. There is not a case to be found, from the earliest reports down to the present time, where a conviction has been had because the possession of an article was obtained by fraud, where the fraud proved was not gross, actual and apparent ; and to sustain a conviction on these facts is to totally obliterate the line of demarcation between malicious trespass and theft.

2. There was no legal evidence of a *felonious intent* on the part of Fenn when he received the note handed him by Bartlett. This is essential and must be proved. 2 Swift Dig., 341. A felonious intent in larceny is only evidenced by force or fraud preceding or accompanying the act of larceny. 3 Greenl. Ev., § 157; 2 Swift Dig., 342. Felonious intent is rebutted by the fact that the taking was open, public, avowed and justified immediately after the taking. There was no attempt to conceal the fact of his having the note, although there was an equivocation on his part as to the disposition of it at first. His purpose not to return it to Bartlett was manifest from the first. And when the officers came he avowed and justified the destruction of the note on the ground of Whittemore's fraud in obtaining the note from

him.   The State introduced the evidence of Fenn's conduct
and declaration to prove the intent, and offered no evidence
to disprove the reasons given by him for the destruction of
the note.   He asserted a claim of right, at the time of the
transaction, and the State rested without offering any evi-
dence to disprove that claim.   2 Swift Dig., 341 ; 3 Greenl.
Ev., §§ 157, 158.   On this point the finding of the jury is
clearly against the evidence.

3.   The allegation of *ownership of the note* was material,
and ought to have been proved.   2 Swift Dig., 340 ; Roscoe's
Crim. Ev., 512 ; 3 Greenl. Ev., § 161.   The only evidence
on the subject of the ownership of Henry A. Warner, is,
that on the 24th day of April, 1873, a person of that name
left with Bartlett as treasurer " a note for collection, the
proceeds to be placed to the credit of said Warner if col-
lected, but if not paid to be protested, &c." ; and that the
note purported to be endorsed " Pay H. A. Warner or order."
This evidence is clearly insufficient; for every material fact
must be proved by proper legal evidence beyond a reasonable
doubt.   On this point it failed and the verdict is without
foundation.

4.   The allegation that this negotiable note was *endor'sed
and delivered* by Whittemore, was material and ought to
have been proved, because it was not only a descriptive alle-
gation, but an allegation by which alone the title of the note
could be transferred from Whittemore to Warner.   " Where
a person or thing is described with greater particularity than
is necessary, those circumstances must be proved."   Roscoe's
Crim. Ev., 76 ; *U. States* v. *Porter*, 3 Day, 283.   The State
seems to have gone upon the theory that the simple name,
F. J. Whittemore, appearing on the note, of itself proved
that Whittemore put it there.   *Rex* v. *Craven*, Russ. & Ry.
C. C., 14.   Here, also, the verdict is unsupported.

5.   The allegation of *the value of the note* is also material
and ought to have been proved.   The finding of the jury
that the note was worth or of the value of $2,300, rests
simply on the sum named in the note, and on the fact that
the note was in some measure secured by mortgage, without

State v. Fenn.

any evidence that the maker or endorser, or the mortgage security, were worth a dollar. This evidence is insufficient. 3 Greenl. Ev., § 153. There is no presumption that the note of a private citizen is of any particular value, or of its face value. There could be no gain to the taker or loss to the owner in its destruction; it was one of several evidences of debt, any one of which was sufficient. The note had no market value in itself and its transfer passed no property; by taking it the defendant could not steal the title any more than he could steal the title to land by stealing the deed. If the note was of some value as a piece of paper, that value was nominal, not proved and not within the jurisdiction of the court.

*Second.* The court erred in its rulings and charge.

1. As to the variance. The court erred in admitting the note in evidence against the objection urged by the defendant; and also, in refusing to charge the jury that variance between the note alleged and the note proved was material and fatal. Such variance did exist in this:—the allegation is of a note of a given date, payable at a given date, for the sum of $2,300, for value received. The note proved coincides in date and time of payment, but the promise is greater. The maker agreed to pay, and the payee was entitled to receive, by the express terms of the note, a much larger sum than $2,300, viz:—the interest and the taxes. These two items are integral and material parts of the contract, both as to the identity of the note and as to its value. A conviction for stealing the one described would be no bar to a prosecution for stealing the different one proved. In a civil action the same misdescription would be fatal, and the rule is the same in this case, but with greater strictness in favor of the accused. *Regina* v. *Lowrey*, Law Reps., 1 Crown Cas., 61; *Regina* v. *Jones*, 1 Cox C. C., 105; *Regina* v. *Bond*, 12 id., 257; *Rex* v. *Owen*, 1 Moody C. C., 118; *Rex* v. *Deeley*, id., 303; *Rex* v. *Bond*, 1 Den. C. C., 517; *Rex* v. *Wolford*, 1 Mood. & Rob., 384; *Rex* v. *Jones*, 5 Car. & P., 156; *Commonwealth* v. *King*, 9 Cush., 284; *Commonwealth* v. *Beaman*, 8 Gray, 497; *U. States* v. *Hardyman*, 13 Peters, 176, 179;

1 Bishop Crim. Law, 1052, 1053; 2 Bishop Crim. Proc., 710; Arch's Crim. Pl., 190.

2. The court erred in refusing to charge the jury that where the note could be accurately described by the state's attorney, he was bound so to describe it. Goods alleged to be stolen must be accurately described. 2 Swift, 340. Unless the attorney is unable so to describe them, in which case he must so state. In this case the attorney neither describes the note accurately, nor says that he cannot so describe it.

3. In refusing to charge as requested concerning the ownership of the note. The defendant was entitled to this charge. The facts were as described, and on these facts an acquittal should follow.

4. In refusing to charge concerning the value of the note as requested. The defendant was entitled to this charge. The facts were as described, and on these facts an acquittal should follow. The court did not so charge, but told the jury that they might *infer* the value from any evidence there was. The evidence is all in the record, and we submit that there is nothing on which to base a conjecture.

5. In refusing to charge that to constitute theft the taking must be private. In theft, in this state, the taking must be private. The statute says "steal." To steal is to take privately. A felonious intent and an intent to take publicly are not consistent with each other. The court did not so charge, but told the jury, in substance, that any taking, with intent to deprive the owner of his property, and to procure gain to the taker, was a theft. His definition of felonious intent is erroneous. *Regina* v. *Holloway*, 3 Cox C. C., 241; *Ransom* v. *State*, 22 Conn., 156.

6. In refusing to charge as requested concerning taking by fraud. There was no evidence of any fraud preceding or accompanying the taking. Fraud is an act or word, and not a mere state of mind. The court told the jury, in substance, that the purpose in Fenn's mind at the time of the passive reception of the note, could convert such passive reception into an active taking; and that a felonious intent existing in the

mind is all that is necessary to make the reception or possession a sufficient taking to constitute theft. This was erroneous.

*Foster*, State's Attorney, and *Doolittle*, contra, cited with regard to the sufficiency of the description of the note in the information, 3 Chitty Crim. Law, 975, 1 Wharton's Crim. Law, §§ 317, 355, 358, *Commonwealth* v. *Richards*, 1 Mass., 337, and *Salisbury* v. *The State*, 6 Conn., 101; and as to the offence being larceny, 2 Starkie Ev., 607, and 3 Greenl. Ev., §§ 157, 160.

PHELPS, J. The defendant moves for a new trial for a verdict against evidence, and for the admission by the court of certain testimony offered by the State and objected to by him, and also for sundry alleged errors of the court in its instruction to the jury.

1. We are satisfied from the testimony recited in the motion that the verdict is not so manifestly against the weight of the evidence properly admitted in the cause, as to require us on that ground to set aside the verdict.

The State was bound to prove the felonious intent by the defendant at the time of the taking of the property, that it was of some actual and intrinsic value and was the property of the person named as owner in the information, and that it was taken by the defendant either secretly and without the knowledge of the owner, or openly by deception, artifice, fraud or force, and with the design then entertained to deprive the owner of it and secure to himself some personal benefit from the wrongful taking. We think the evidence detailed in the record justified the jury in finding all these propositions proved. The direct proof of the value and ownership of the note was not in itself necessarily conclusive, but we think it was so far corroborated by the circumstances, and especially by the conduct of the defendant, that we cannot properly say the verdict with respect to those allegations was unwarranted.

2. The note was proved on the trial to have been payable with semi-annual interest and all taxes that should be

assessed on the amount of money represented by it. The description of it in the information omitted those particulars, and the defendant objected to the evidence descriptive of the note on the ground of a material and fatal variance.

In a prosecution for theft the property alleged to have been stolen must be described with substantial accuracy, so that its identity shall be unquestionable and the defendant thereby protected from another prosecution for the same offence. We think that it was reasonably done, and that the defendant who wrongfully took the note and destroyed it should not be permitted to say it was not described with the utmost possible particularity. There is nothing in the circumstances which indicates any danger of his being subjected to another prosecution by reason of such incomplete description, and the attorney for the State has carefully inserted in one of the counts in the information the usual averment in such cases that a more particular description of the property was to him unknown.

A similar objection was taken to evidence showing the precise form of the indorsements of the note by the payee and indorsee, on the ground that the information did not state the *form* of the indorsement by the payee, or that the indorsee who was the owner had indorsed it at all. Sufficient was alleged to show that the title passed by indorsement from the payee to the indorsee, and as the latter was alleged to be the owner the question whether he had written his name on it by way of a blank indorsement without delivery could not in this case be material. The question was one of title, and his placing his name for the purpose of collection on the back of a note payable to his order would not affect that, and as a matter of mere technical form was unimportant.

3. A large number of objections are taken to the instructions given by the court to the jury. Those relating to the question of variance between the information and the proof are sufficiently noticed and disposed of in what has been already said with reference to the admissibility of the evidence on those points. The other questions made relate to

the value and ownership of the note, the manner it was taken by the defendant, and the intent with which it was done. The jury were required to find, under the instruction given them, that the note was of some substantial value, that Warner was the owner of it when it was taken by the defendant, that the taking was either secretly done, or openly by fraud or force, and in either mode with the felonious intent to deprive the owner of his property in it, and convert it to the private advantage of the defendant. On all these points the law was fully, plainly and correctly stated, and the defendant has no just reason for complaint.

We advise the Superior Court that a new trial be not granted.

In this opinion FOSTER and PARDEE, Js., concurred; CARPENTER, J., also concurred, but with hesitation. PARK, C. J., dissented.