THE STATE OF CONNECTICUT *vs.* CATHERINE REYNOLDS
ET AL.

*First Judicial District, Hartford, May Term, 1920.

PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

An application under General Statutes, § 5836, to rectify the recital, or so-called "finding," of the trial judge of the claims urged by the State in a criminal prosecution, will be granted by this court only where such rectification is essential to a fair presentation of the appeal.

Obtaining possession of money by false and fraudulent representations, and carrying it away with intent to convert it to the possessor's own use and to permanently deprive the owner of his property, constitutes theft.

The evidence adduced to prove theft in the present case reviewed, and *held* to have warranted the verdict of guilty returned by the jury.

One of the accused having testified upon cross-examination that she was unfamiliar with business matters, was asked whether she had

*Transferred from the third judicial district.

The State *v.* Reynolds.

had any financial transactions of any size about the time of the alleged theft, and finally answered "Yes." *Held* that this question was plainly admissible, and that the accused had no just ground for complaining that this line of inquiry—thereafter pursued without apparent objection—had prejudiced her case before the jury.

The accused complained of parts of the charge as argumentative. *Held* that a careful reading showed that the court was not making comments of its own, in the main, but was stating the claims of the State on the evidence; and that if in one or two places some color was lent to the criticism, they were manifestly due to the inadvertent omission of a word or two, and all doubt of their real character removed by the context.

Undue prominence was asserted to have been given to the State's claims at the expense of those of the accused. *Held* that such criticism was unfounded: that the court's method was in manifest fulfilment of a plain duty.

A sentence or portion of a charge may be incomplete, and hence an incorrect statement of the law; but if the earlier instructions have carefully and fully defined the crime upon which the jury are to pass, and have sufficiently emphasized its essential elements, the isolated passage will be considered with intelligent reference to those correct and reiterated directions, and the charge, as a whole, as having given the jury a correct and fixed appreciation of the invariable importance of these essential elements.

Argued May 12th—decided July 20th, 1920.

INFORMATION for stealing $5,000, brought to the Superior Court in New Haven County and tried to the jury before *Warner, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

The State claimed to have established these facts: The defendants are sisters of attractive appearance. For four years prior to the occurrences involved, Reynolds had been engaged in soliciting orders from house to house for toilet soap, perfumery and similar articles, and in making personal deliveries of the articles sold. DiMock was a housewife, and they lived together. Sometime in April, 1919, Reynolds made the acquaintance of one Julius Beaumont at his home in New Haven. Beaumont was a widower, eighty years old, fairly intelligent, and a man of considerable property, both

real and personal. Reynolds on that occasion was accompanied by another woman, but she called again next morning alone, and in the course of conversation solicited and got from him a small sum of money for the alleged purpose of paying freight charges on a box of soap. Within a day or two thereafter Reynolds again called on Beaumont, this time with her sister, DiMock, whom she introduced to him, and from that time the visits of both were frequent. Shortly before May 20th, 1919, they told Beaumont that they owned a substantial interest in $9,400 worth of liberty bonds for which they had subscribed, and on which subscription they still owed a large balance. They told him that they wanted money to pay up this balance, and asked his financial aid for that purpose, saying that when the amount was paid, they would get the bonds, "divide them and pay back with these liberty bonds." They further said "that these bonds were in the possession of some woman who was near at hand; that it would take only about ten minutes to go from his house there, pay them up and return with the bonds, and that then he was to get his part of them and they would retain the rest, and further, that he was to get his portion of the money back in these bonds." Beaumont on three successive days beginning May 20th after the representations just referred to, borrowed from a New Haven bank sums on collateral as follows: May 20th, $700; May 20th, later in the day, $600; May 21st, $1,500; May 22d, $2,000. Within a half hour after the receipt of each of these sums in currency from the bank, Beaumont handed in each instance the amount so received to the defendants at his house. At some time during these days he also handed to them the sum of $200 which he had not borrowed from the bank. The entire amount so delivered by him to the defendants was $5,000. These moneys were so delivered

to them "for the specific purpose and condition that they should be used to pay the amount due on these bonds, and that of these bonds an amount equivalent to the $5,000 delivered should be returned to him, or failing that, that the $5,000 should be returned to him." After each delivery of money to them by Beaumont as before described, the defendants left him ostensibly to get the bonds, but invariably returned to state that they needed more money to complete their obligation to the holder of the bonds, and that they had underestimated the amount necessary for their purpose. They returned with the same story after departing with the last delivery of money on May 22d, amounting to $2,000, saying that they needed an additional sum to "complete their obligation to the holder of these bonds." Beaumont then refused to proceed further with the transaction. On this occasion one Thompson, a lawyer and for many years Beaumont's neighbor and acquaintance, was present. In reply to his inquiries, the defendants said they did not have the bonds and must have more money before they could get them,—DiMock saying they were "in the possession of a lady living nearby," and that $2,000 more was required to get them. DiMock added almost immediately: "We haven't got any money of Mr. Beaumont's or any liberty bonds. All the money she has had has been about $200 from him." No bonds were ever delivered to Beaumont by either of the defendants, nor did either ever return to him any part of the $5,000.

The defendants claimed to have proved that no money was paid to DiMock by Beaumont, and that none was ever given or delivered to Reynolds by him, except the sum of about $250, which he gave to her to purchase dresses for her contemplated marriage with him, and that at no time was the subject of liberty

bonds spoken of or considered between the defendants, or either of them, and Beaumont.

Upon the trial the defendant DiMock testified on her own and her sister's behalf. She was asked upon cross-examination: "You were utterly unfamiliar with business matters of course, weren't you?" and upon answering "Yes, sir," was further asked: "You never had any financial transactions of any size at any time about this time, had you?" An objection to this was overruled, and an exception noted. The witness after first answering: "I don't know what he means," finally answered: "Yes, sir."

The appeal assigns error in this ruling, and in certain portions of the court's charge to the jury which are sufficiently referred to in the opinion. Error is also assigned of the court's denial of a motion to set aside the verdict, and the evidence has been certified as a part of the record.

By a proceeding under § 5836 of the General Statutes, the defendants made application in this court to rectify the appeal in certain particulars.

*Charles Kleiner* and *Michael J. Quinn*, for the appellants (the accused).

*Arnon A. Alling*, State's Attorney, for the appellee (the State).

CASE, J. The application to correct the appeal is without merit. It is an attempt to reframe in certain particulars the statement by the trial judge of what the State claimed to have established by its evidence to the jury. While this in a sense is a "finding" subject to correction by us when the fair presentation of the appeal demands it (*Sansona* v. *Laraia*, 88 Conn. 136, 90 Atl. 28), no occasion calls for such action here, and the application is dismissed.

The evidence warranted the jury in finding that by a series of deliveries, all within a consecutive period of three days, Beaumont put into the hands of the defendants sums of money aggregating $5,000, at their continued solicitation and upon the explicit condition that the money should be used to pay for certain liberty bonds which they falsely represented they had an interest in, and upon which a certain sum was still to be paid by them; that the bonds should then be immediately brought to him for a division, and that an amount in bonds equal to the $5,000 so delivered should be turned over to him in place of the money, and that unless the bonds were so immediately redeemed and brought to him, the $5,000 so delivered should be returned by the defendants to Beaumont. It warranted the further finding that after the last of these sums had been delivered, the defendants, failing to secure the delivery of still more money by the same fraudulent method, admitted that they had no bonds to deliver, and denied that they had Beaumont's money.

With the plainly warranted inference of the essential felonious intent to permanently deprive Beaumont of his property, these facts indisputably disclose all the elements of larceny. "Obtaining possession by fraud in such a case is regarded as having the same effect as obtaining possession by trespass." *Commonwealth* v. *Flynn*, 167 Mass. 460, 464, 45 N. E. 924; 2 Bishop's Criminal Law (8th Ed.) § 166. They justify the further finding that the several deliveries were part of a single definite scheme or transaction, all accompanied by a felonious intent to permanently deprive Beaumont of his money and to appropriate it to the use of the defendants, whose acts ripened into and culminated in a single theft of all the money so secured, when their appropriation of the final instalment of $2,000 and their avowed refusal to fulfil the

conditions upon which the money was delivered, completed their conversion of the entire sum. The verdict was warranted by the evidence and the trial court properly refused to set it aside.

There was no error in the admission of the question asked of the witness DiMock. The nature of the charge against her and the scope of the evidence relied upon to maintain it, easily brought the question within the wide latitude of fair cross-examination, though naturally enough the topic had not been touched upon in the direct examination of the witness. Several questions and answers immediately following the one objected to accompany the court's statement of the ruling in the finding. We discover in them no warrant for the defendant's complaint that the subject was calculated to prejudice her case before the jury, and as the initial and plainly admissible question was the only one objected to, it is perhaps fair to infer that the earlier impressions of her counsel were of the same character.

The remaining four assignments of error deal with the court's instructions to the jury. One of them selects for criticism a portion of the charge covering more than two printed pages of the record. We find it unnecessary to reproduce it since a careful reading of the part objected to as argumentative shows that the court was not in the main making comments of its own, but was stating the claims of the State upon the evidence. There are one or two places which, if isolated, might lend some color to the defendants' claim, but they are manifestly due to the inadvertent omission of a word or two, and all doubt of their real character is removed by the context. *Chany* v. *Hotchkiss*, 79 Conn. 104, 63 Atl. 947.

The further complaint, that undue prominence is given to the State's claims at the expense of those of

the defendants, is unfounded. The court's method on this branch of the case was in manifest fulfilment of a plain duty. *State* v. *Marx*, 78 Conn. 18, 28, 60 Atl. 690.

Error is also assigned of this language of the charge: "Now, another proposition is, if the property was given outright, of course, it would not be larceny. But if Beaumont were induced, if he authorized the accused or either of them to take the possession of this money for a certain definite specific purpose, conditioned for that purpose, and that purpose were not performed or accomplished, then it would be larceny." Standing by itself, the second sentence of this portion of the charge is an incomplete, and hence incorrect, statement of the law. Obviously the court did not mean that the mere failure to accomplish the purpose for which the money was conditionally delivered, would of itself make a theft of the transaction, though the instruction is open to that construction. It must be considered, however, with intelligent reference to earlier portions of the charge, where the court has carefully and with adequate fulness defined theft and given sufficient emphasis to its essential elements. Thus, after giving the jury the accepted definition of larceny, the court adds: "The very essence of the crime is the felonious intent, and this wrongful intent and fraudulent intent must be present at the time of the taking, and as an intent fraudulent, without color of right or excuse, to obtain the property of another." Again, the jury were told that if the wrongful possession of one's property, although obtained openly "but by exercising some deception, artifice or fraud," is followed by a conversion and appropriation by the taker to his own use, "the jury would be justified in finding that the taking was with a felonious intent." And finally, a little before the statement to which exception is taken,

the court, in dealing with money as the proper subject of theft, says that "there must be the felonious intent at the time of taking to deprive the owner permanently of his property, and it must be further without any claim of right." In addition to this, the court's last caution to the jury before the instruction under discussion was, that if "Beaumont gave the money to the accused or either of them, no matter what means were used to obtain his consent in so giving," neither was guilty of larceny. We think these repeated references to the essential elements of the offense must have given the jury a correct and fixed appreciation of their invariable importance, and that they could not reasonably have construed the instruction under criticism as in any way qualifying the rule that had been formulated for them, or relieving it of any of its inflexible requirements.

The remaining assignments are without force and call for no independent consideration.

There is no error.

In this opinion the other judges concurred.