STATE OF CONNECTICUT *v.* ARTHUR J. VARS, SR.

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, Js.

Argued June 10—decided October 19—reconsidered November 14—
substitute opinion November 29, 1966

*Melvin Scott,* with whom was *Matthew Shafner,* for the appellant (defendant).

*Edmund W. O'Brien,* state's attorney, and *Joseph T. Sweeney,* special assistant state's attorney, for the appellee (state).

House, J. The defendant on a trial to a jury was convicted on two counts, each charging the crime of larceny. Error is assigned in the finding, in the charge, in rulings made during the course of the trial and in the denial of the defendant's motion to set aside the verdict. The latter ruling is tested by the evidence contained in the appendices to the briefs. Practice Book §§ 716, 718, 720-722; *State* v. *Keating,* 151 Conn. 592, 595, 200 A.2d 724, cert. denied, sub. nom. *Joseph* v. *Connecticut,* 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557; Maltbie, Conn. App. Proc. § 185, p. 227. Assertions that claims of proof in the finding are not supported by the evidence are similarly tested to determine whether the evidence supports the findings attacked. Practice Book § 718; *State* v. *Devine,* 149 Conn. 640, 654, 183 A.2d 612, cert. denied, sub. nom. *Cooper* v. *Connecticut,* 371 U.S. 930, 83 S. Ct. 303, 9 L. Ed. 2d 237; Maltbie, Conn. App. Proc. §§ 330, 331. On the other hand, the charge and the rulings made during the course of the trial are tested by the claims of proof in the finding and not by the evidence. Practice Book §§ 635, 648; *State* v. *Mallette,* 153 Conn. 584, 587, 219 A.2d 447; *State* v. *DaVila,* 150 Conn. 1, 5, 183 A.2d 852; *State* v. *Harris,* 147 Conn. 589, 599, 164 A.2d 399; Maltbie, Conn. App. Proc. §§ 145, 147.

An examination of the evidence as summarized and quoted in the appendices to the briefs indicates that there was evidence either directly or by reasonable inference to support each of the twelve paragraphs of the finding which the defendant attacked. The finding furnished a fair and adequate basis for testing the errors in law claimed to have been made by the court, and no corrections are warranted. *State* v. *Whiteside,* 148 Conn. 208, 215,

169 A.2d 260, cert. denied, 368 U.S. 830, 82 S. Ct. 52, 7 L. Ed. 2d 33.

Before considering the factual situation presented by the evidence, we first examine the specific offense with which the defendant was charged and the elements of that offense which the state was required to prove beyond a reasonable doubt. The statute under which the defendant was charged provides that "[a]ny person who steals any money, goods or chattels . . . , if the value of the property stolen exceeds two thousand dollars, shall be imprisoned . . . ." General Statutes § 53-63 (a). This statute embraces the common-law crime of larceny. *State v. Benson,* 153 Conn. 209, 211, 214 A.2d 903. "To support a conviction for larceny, the evidence must be sufficient to establish the essential elements of the crime charged. These are (1) the wrongful taking and carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of it permanently; and (3) the lack of the consent of the owner. *State v. Main,* 75 Conn. 55, 59, 52 A. 257; *State v. Sawyer,* 95 Conn. 34, 36, 110 A. 461; 2 Swift's Digest 309; 2 Wharton, Criminal Law (12th Ed.) § 1097; 1 Bishop, Criminal Law (9th Ed.) § 566; 32 Am. Jur. 883 [Larceny, § 2]." *State v. Banet,* 140 Conn. 118, 122, 98 A.2d 530.

Each count of the information charged that the defendant stole a sum of money from the savings account of Joanna Rockwell. There is no justification for the claim by the defendant that the wrongful taking and carrying away charged in the information was the taking and carrying away of withdrawal orders. The information in the first count expressly charges that the defendant "stole the sum of $8000.00 from the bank account of one Joanna

Rockwell." The second count contains the same allegation except for the different amount of $13,000. The bill of particulars does not change this basic allegation of larceny of the two sums but merely details with greater specificity the manner in which the theft of the money was accomplished by the defendant, i.e., "by his fraudulently obtaining from Mrs. Joanna Rockwell, without her knowledge or consent, withdrawal orders on said bank signed by Mrs. Joanna Rockwell which were thereafter used. by the said accused to unlawfully obtain the sums of money from Mrs. Rockwell's bank account on the dates and in the amounts as alleged in the information."

The charge, therefore, in each count was the theft of a sum of money from Mrs. Rockwell's savings bank account accomplished by a specified set of acts with a specified intention, all of which constituted an allegation of larceny of sums of money by fraud, artifice or trick. "The state was attempting to establish the crime of larceny by trick. This crime is committed when one obtains 'the possession of personal property of another by deception, artifice, fraud or force, with the intent on the part of the person obtaining it to convert it to his own use and permanently deprive the owner of his property.' *State* v. *Rapsey,* 115 Conn. 540, 542, 162 A. 262; *State* v. *Fenn,* 41 Conn. 590, 605." *State* v. *Robington,* 137 Conn. 140, 143, 75 A.2d 394; see *State* v. *Reynolds,* 95 Conn. 186, 191, 193, 110 A. 844; *State* v. *Levine,* 79 Conn. 714, 717, 66 A. 529; *State* v. *Kallaher,* 70 Conn. 398, 409, 39 A. 606. "When a person by trick or fraud obtains possession of property, intending at the time of obtaining the property to convert it to his own use, and does so convert it, the fraud is the equivalent of a felonious taking

and the offense is larceny." 2 Wharton, Criminal Law and Procedure § 477.

Where the taker is also in the position of an agent of the victim of the taking, the time of the forming of the felonious intent to take is of paramount importance in the determination whether the taking constitutes embezzlement or larceny. A key element in the former offense is the lawful receipt by an agent of the property which is the subject of the subsequent felonious conversion. *State* v. *Serkau*, 128 Conn. 153, 157, 158, 20 A.2d 725. Where, however, the principal is tricked into parting with possession by the agent who, at the time of his taking, has the felonious intent to convert the property to his own use, the offense is larceny and not embezzlement. The principle is well stated in 32 Am. Jur., Larceny, § 31: "Notwithstanding the general rule that larceny is not committed by a taking which is accomplished with the consent or acquiescence of the owner of the property, the offense is larceny if the owner of goods parts with the possession only, for a particular purpose, and the person who receives the possession avowedly for that purpose has a fraudulent intention to make use of it as the means of converting the goods to his own use, and does so convert them, for in such case the fraud supplies the place of the trespass in the taking, or as otherwise stated, the subsequent felonious conversion of the property by the alleged thief will relate back and make the taking and conversion larceny." In 52 C.J.S., Larceny, § 32, the rule is thus stated: "A person in possession of money or other personal property of another may become guilty of larceny at common-law by converting such money or property to his own use pursuant to an intent so to convert which was enter-

tained at the time of acquisition." In 52 C.J.S., Larceny, § 36 (b), it is noted: "Title to money or other personal property delivered by the owner for use for, or application to, a special purpose does not necessarily pass to the person to whom the property is delivered and such person may be guilty of larceny where delivery was fraudulently induced." See generally, *Graham* v. *United States,* 187 F.2d 87, 89, 88 App. D.C. 129, cert. denied, 341 U.S. 920, 71 S. Ct. 741, 95 L. Ed. 1353; *Commonwealth* v. *Leland,* 311 Mass. 447, 452, 42 N.E.2d 249; 2 Wharton, Criminal Law and Procedure § 509; notes, 26 A.L.R. 381, 389, 146 A.L.R. 532, 549.

With respect to the possessory interest retained by a depositor in a mutual savings institution, it is pertinent to note that, although deposits in an ordinary commercial bank create the relation of debtor and creditor between the bank and the depositor, and the money deposited becomes the property of the bank, which holds it not as the agent but as the debtor of the depositor, a different relation is created by a deposit in a mutual savings institution. Like savings banks, savings and loan associations are incorporated agencies without capital stock. Each is organized "to accumulate the savings of its members and invest the same in mortgages, loans and such other securities as are allowed by law." General Statutes § 36-172 (a). The members of the association are those in whose names savings accounts are established; General Statutes § 36-172 (b); and although the association becomes in a sense the debtor of the depositor, "it is also his agent since the depositor retains the equitable ownership of the deposit while transferring the legal title to the . . . [association] for the purpose of investing and conserving it for him." *Alexiou*

v. *Bridgeport-People's Savings Bank,* 110 Conn. 397, 400, 148 A. 374.

Turning now to the evidence, we can accept the defendant's assertion that "[t]he basic facts regarding the alleged crimes were not in issue. It was the intention of the parties or their state of mind as they performed these acts which is contested." "A question of intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be reached." *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 543, 102 A.2d 366. Intention is a mental process, and of necessity it must be proved by the statement or acts of the person whose act is being scrutinized. *State* v. *Mazzadra,* 141 Conn. 731, 735, 109 A.2d 873. "A person's intention in any regard is to be inferred from his conduct"; *Kiernan* v. *Borst,* 144 Conn. 1, 6, 126 A.2d 569; and ordinarily can be proven only by circumstantial evidence. *State* v. *Sul,* 146 Conn. 78, 87, 147 A.2d 686.

From the evidence, the jury could find that on January 1, 1962, Mrs. Joanna Rockwell was an elderly widow who resided in New London. She had $22,186.56 in a savings account in the New London Federal Savings and Loan Association, $7216.27 in another savings account in the Savings Bank of New London, and a checking account in another bank. She was pretty careful with her money. With her lived Mrs. Evelyn Hammond, who was hired as a companion and housekeeper by Mrs. Rockwell's grandchildren. Shortly after her employment started, Mrs. Hammond introduced her son-in-law, the defendant, to Mrs. Rockwell, and he began to help Mrs. Rockwell with her financial transactions. There developed a customary procedure whereby

Mrs. Hammond would save or accumulate Mrs. Rockwell's bills; the defendant, who used to visit Mrs. Rockwell as often as two or three times a week, would fill out checks drawn on Mrs. Rockwell's checking account to pay these bills, Mrs. Hammond's salary and the rent; Mrs. Rockwell would then sign the checks and the defendant would mail them. Except for one or two exceptional occasions, Mrs. Rockwell always went to the bank with the defendant. The defendant would ordinarily take Mrs. Rockwell out to go to the bank on Tuesday or Friday of each week, and on these trips he would fill out forms for her signature and help her in making deposits to her checking account and in transferring funds from either of her savings accounts to her checking account. It was his custom to help Mrs. Rockwell into the bank, sit her on a little couch, go to a center table in the lobby, fill out a withdrawal form, take the form to her for her signature and then go himself with the passbook and withdrawal order to the teller's window to complete the transaction. Mrs. Rockwell was the only owner of each of the savings accounts. They were under her sole control, and under her contract of deposit with each institution she alone possessed the power to draw money from the accounts. To make a withdrawal, it was necessary for her to sign a withdrawal slip or order to pay money, and the bank or savings and loan association in each instance would make payment to anyone who presented such a withdrawal order duly signed by Mrs. Rockwell, together with her passbook for the account involved. On several occasions during this period, the defendant would have Mrs. Rockwell give him possession of the appropriate passbook and sign a withdrawal order, which he would personally present to a teller

from whom he would receive payment for Mrs. Rockwell from the savings account involved.

On June 4, 1962, the defendant took Mrs. Rockwell to the office of the New London Federal Savings and Loan Association in New London where he filled out and obtained her signature to a withdrawal order for $400 payable in cash and to a withdrawal order directing payment of $8000 to him by check from her savings account. He then presented the orders to a teller, together with Mrs. Rockwell's passbook, and received the cash for Mrs. Rockwell and a check payable to himself for $8000 which he, on the same day, deposited to his personal account in a bank in Norwich. Again, on August 27, 1962, he followed the same procedure, and there was a cash withdrawal of $150 and a separate withdrawal by check to his order for $13,000, which he again, on the same day, deposited to his same account in Norwich. Between November 30, 1962, and August 26, 1963, nine other withdrawal slips involving Mrs. Rockwell's account were presented to the savings bank, each signed by Mrs. Rockwell, and in each case the defendant received the money. The subsequent disposition of these withdrawals is not disclosed by the record. On January 7, 1963, $188.49, the balance then remaining in the savings and loan account, was withdrawn pursuant to a withdrawal order, signed by Mrs. Rockwell, directing that the check be made payable to her. The check issued for this withdrawal bears both her endorsement and that of the defendant.

In August, 1963, Mrs. Rockwell left New London to reside in Stamford. Her two grandchildren discovered that she no longer had possession of the savings and loan passbook, and her grandson called the defendant to inquire about the disappearance

of the passbook for this account. The defendant replied that this account had been used up some time ago, but the only explanation he offered for this was that Mrs. Rockwell had given some of it away to the Jehovah's Witnesses and to others. The defendant did not testify, and the record contains no other explanation whatsoever by the defendant for the transfer of the $21,000 from Mrs. Rockwell's savings account to his own account. Mrs. Rockwell testified that on no occasion did she ever give any money whatsoever to the defendant, nor did she ever loan him any money.

From this evidence, the continued confidential relationship and course of conduct between Mrs. Rockwell and the defendant in connection with her banking and financial transactions, his customary preparation of checks and withdrawal orders for her, her testimony that she never gave or loaned any money to the defendant, his immediate conversion to his own account and use of the two large withdrawals from Mrs. Rockwell's account, and the defendant's only explanation of the depletion of the account as due to gifts which Mrs. Rockwell had made, the jury could reasonably infer and find that the defendant successfully contrived to obtain the two large withdrawals to his order and that, when he received the funds, he then had the felonious intent to convert these funds to his own use rather than to take and use them as the agent of Mrs. Rockwell for her sole use and benefit as she intended any withdrawals from her savings accounts to be used. There is no prescribed set of circumstances which shows the commission of the crime of larceny by trick. The sufficiency of the proof must, in each instance, be left to the jury to determine. *State v. Parker*, 112 Conn. 39, 54, 151 A. 325. Here there

was evidence from which the jury could reasonably and logically conclude that the state in both counts had proved all of the elements of the crime of larceny by trick. Accordingly, there was no error in the ruling of the court denying the motion of the defendant to set aside the verdict.

The defendant has assigned as error a ruling of the court in admitting into evidence testimony and certain records concerning Mrs. Rockwell's account at the Savings Bank of New London. These records were of nine withdrawals from Mrs. Rockwell's account at the Savings Bank of New London during the period from November 30, 1962, to August 26, 1963, and in each instance indicated that the withdrawal orders were signed by Mrs. Rockwell but that the money was actually delivered to the defendant. The evidence was offered to show a course of conduct between the defendant and Mrs. Rockwell. It was admitted by the court for this limited purpose, and the jury were properly instructed as to the limitation. In a prosecution for such a crime as larceny by trick, "the range of relevant evidence is wide, especially as it bears on the essential element of an intent to defraud, which involves a state of mind and can generally be proved only by circumstantial evidence." *State* v. *Harris,* 147 Conn. 589, 601, 164 A.2d 399. The intention of the defendant in taking the sums of money with which he is charged was a material question for the jury to determine. "For the purpose of showing such intention, inquiries as to his conduct, and all the circumstances preceding, accompanying, or following such taking, so far as they are relevant, are, as in all other cases of a similar accusation, admissible." *Ransom* v. *State,* 22 Conn. 153, 160. "The habit or practice of doing a certain thing in a cer-

tain way is evidence of what actually occurred under similar circumstances or conditions." *Caslowitz* v. *Roosevelt Mills, Inc.,* 138 Conn. 121, 125, 82 A.2d 808; 32 C.J.S., Evidence, § 580. There was no error in the ruling.

Mrs. Rockwell was called as a witness by the state and extensively examined and cross-examined. Later the same day she was called as a witness for the defendant and again extensively examined and cross-examined. Subsequently, the defendant moved that her testimony be stricken, and, when this motion was denied, he moved for a medical examination to determine her competency as a witness. Both motions were denied, the judge stating that he saw no reason for granting either motion, that mere lapse of memory is not sufficient reason for striking testimony and that in the exercise of his discretion he was denying the motions. We find no error in these rulings. A question as to the competency of a witness "is a matter peculiarly within the discretion of the trial court and its ruling will not be disturbed unless in a clear case of abuse or of some error in law." *State* v. *Orlando,* 115 Conn. 672, 675, 163 A. 256; see *State* v. *Segerberg,* 131 Conn. 546, 41 A.2d 101; 3 Wigmore, Evidence (3d Ed.) § 931; notes, 26 A.L.R. 1491, 148 A.L.R. 1140. "The trial court is generally in a better position to judge the competency of the witness than the appellate court . . . and will not be reversed unless clearly and manifestly wrong." *State* v. *Schweider,* 5 Wis. 2d 627, 630, 94 N.W.2d 154. "The court is not bound to order an examination on the question merely because counsel for the accused requests that it be done, where the court, after hearing the testimony of the witness, has no doubt of his mental soundness." *Commonwealth* v. *Kosh,* 305 Pa. 146,

155, 157 A. 479. We also note that the court fully and correctly instructed the jury concerning their duty in passing upon the credibility of witnesses. We find no error in these rulings of the court.

The remaining assignments of error are directed to the court's charge to the jury. With the exception of the instruction concerning the failure of the defendant to testify, which we will later consider, the portions of the charge included in the record appear to be "accurate in law, adapted to the issues and sufficient as a guide to the jury in reaching a correct verdict." *Lucier* v. *Meriden-Wallingford Sand & Stone Co.,* 153 Conn. 422, 426, 216 A.2d 818. The charge as given adequately instructed the jury on such matters as were properly requested by the defendant. "The court is not required to charge in the exact language of a request. Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues." *State* v. *Alterio,* 153 Conn. 23, 27, 220 A.2d 451.

Although the defendant took several exceptions to the charge, the only exception pressed on this appeal is that the charge contained comments with regard to the question of false pretenses and with regard to the question of larceny by trick or artifice. In light of the specific accusations against the defendant, it was not only proper but necessary that the jury be fully instructed about the crime of larceny by trick. The single reference to the term "false pretenses" in the context of fraudulent devices and tricks could hardly have misled the jury. We find no merit to these limited exceptions.

The defendant did not testify, and the remaining assignment of error is directed to a portion of the charge in which the court instructed the jury on the

effect of the failure of an accused to testify. In *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106, the United States Supreme Court reversed the earlier decision in *Twining* v. *New Jersey,* 211 U.S. 78, 29 S. Ct. 14, 53 L. Ed. 97, which permitted comment on the failure of an accused to testify. In *Tehan* v. *Shott,* 382 U.S. 406,. 409 n.3, 418, 86 S. Ct. 459, 15 L. Ed. 2d 453, the court expressly considered the precise question as to the effective time when the new rule laid down in the *Griffin* case should be. made applicable to those states (including Connecticut) which, in reliance upon the earlier decision in the *Twining* case, permitted comment on the failure of an accused to testify, and it concluded that the new *Griffin* rule should have retrospective application only to cases pending on direct review at the time it was announced.

In *State* v. *Annunziato,* 154 Conn. 41, 44, 221 A.2d 57, we recognized and applied the *Griffin* rule and held that the trial court was in error in charging the jury in accordance with the then-established pre-*Griffin* Connecticut law as to the inference which might be drawn from the defendant's failure to take the stand even though, as the opinion notes, the charge was correct under Connecticut law at the time it was given, six months before the *Griffin* case was decided. As we noted in the *Annunziato* case (p. 43), the defendant, alerted by *Malloy* v. *Hogan,* 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653, had, pursuant to the requirements of Practice Book § 249, duly excepted to the charge "on the basic ground that the court's comment on the failure of the defendant to take the stand, as embodied in the charge, was a violation of the defendant's privilege against compulsory self-incrimination,

which is accorded him by the fifth amendment to the federal constitution as made applicable to the states through the fourteenth amendment."'

In the present case, which was tried prior to *Malloy* v. *Hogan,* supra, the defendant did not raise this constitutional question in the trial court and did not except to this portion of the charge and therein lies the material distinction between the *Annunziato* case and the present appeal.

The express requirement that an exception be taken to any portion of a charge if it is to be assigned as error on an appeal to this court is an implementation of the well-established requirements for appellate judicial review by this court since "[i]t is fundamental that an appellant is not entitled to raise any question of law on appeal unless it was raised in the trial court and passed upon there. *Paley* v. *Connecticut Medical Examining Board,* 142 Conn. 522, 528, 115 A.2d 448; *Lavoie* v. *Antupit,* 138 Conn. 422, 424, 85 A.2d 900; Practice Book § 409 [now Practice Book, 1963, § 652]." *Warner* v. *Pandolfo,* 143 Conn. 728, 729, 122 A.2d 738. The United States Supreme Court heretofore has indicated that state procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions would be respected. *Johnson* v. *New Jersey,* 384 U.S. 719, 735, 86 S. Ct. 1772, 16 L. Ed. 2d 882; *Mapp* v. *Ohio,* 367 U.S. 643, 659, 81 S. Ct. 1684, 6 L. Ed. 2d 1081.

On November 14, 1966, however, the United States Supreme Court released its opinion in the case of *O'Connor* v. *Ohio,* 385 U.S. 92, 87 S. Ct. 252, 17 L. Ed. 2d 189. In that case, which is indistinguishable from the appeal before us, the court held that the failure of the appellant to object in accordance with Ohio procedural rules to the pro-

scribed comment on his failure to testify did not bar him on appeal from asserting his federal right as enunciated in the *Griffin* case. Accordingly, the contrary judgment of the Supreme Court of Ohio was reversed.

We regard this decision of the United States Supreme Court as controlling on the present appeal. *Henry* v. *Mississippi*, 379 U.S. 443, 447, 85 S. Ct. 564, 13 L. Ed. 2d 408. Accordingly, we must find error in the portion of the charge commenting on the failure of the defendant to testify although the defendant took no exception to it.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.