UNITED STATES ex rel. Alfred
J. AMAIO

v.

Frederick REINCKE, Warden, Connecti-
cut State Prison.

Civ. No. 12948.

United States District Court
D. Connecticut.

March 12, 1969.

Morton C. Hansen, Jr., Fauliso, Katz & Hansen, Hartford, Conn., for plaintiff.

Arnold Markle, State's Atty., New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION ON PETITION FOR A WRIT OF HABEAS CORPUS

BLUMENFELD, District Judge.

The petitioner, Alfred J. Amaio, was convicted on March 11, 1965, in the Superior Court for New Haven County, Connecticut, upon a charge that he had conspired with others to bribe police officers concerned in the administration of justice, with intent to illegally influence them in their offices, to the end that illegal gambling establishments and illegal liquor establishments might be allowed to operate. Before trial, one of the alleged co-conspirators, Pasquale Guglielmo, pleaded guilty. At the joint trial of three others, Paul Licari was acquitted; Anthony DiBella and the petitioner were convicted. Neither Amaio nor Licari testified at the trial. On appeal, the judgment of conviction was

unanimously affirmed. State v. DiBella 254 A.2d 477 (Conn. 1968).

Amaio's petition raises the claim that his right not to be compelled to be a witness against himself, guaranteed by the fifth amendment to the Constitution of the United States,[1] see Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and made applicable to the State of Connecticut by the fourteenth amendment, see Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653 (1964), was violated by the court's charge to the jury at his trial.

The charge in issue is as follows:

"I have been requested by counsel for Mr. Licari to submit this request to charge to you and I do submit it to you. You will recall that the accused Paul Licari has not testified in this case and I charge you as follows: [An accused person is under no obligation to become a witness in his own behalf. Under our law an accused person may either testify or not, as he sees fit. It is for the State to prove him guilty and no burden rests upon him to prove his innocence.] Until, therefore, you have reached the conclusion that the evidence offered by the State has given rise to such a strong probability of his guilt that a denial or explanation upon his part is reasonably called for, you are not to consider his failure to testify as any evidence of his guilt. If, however, upon the evidence offered by the State you conclude that there is such a probability, his failure to testify becomes a fact which you are entitled to consider. To that fact you should give such weight as you deem the circumstances justify. Whether you shall draw from his failure to testify any inference as to his guilt, which you find as reasonable under all the circumstances, and what weight you should give such an inference, is for you to decide."

Only the qualification following the portion in brackets is claimed to be erroneous. In a separate request filed by Amaio he had requested an instruction of only the three sentences which are included in brackets. Although the requests were duplicated to that extent, the charge requested by Amaio was not given separately.

At the time of the trial, which ended on March 11, 1965, the charge in its entirety was in accord with settled Connecticut law. See State v. Nelson, 139 Conn. 124, 127, 90 A.2d 157 (1952). Soon after the trial, on April 28, 1965, the Supreme Court of the United States in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), held that comment by the prosecutor or the court on the effect of an accused defendant's failure to testify at his trial violated his fifth amendment privilege against compulsory self-incrimination. Following the ruling in Tehan v. United States ex rel. Shott, 382 U.S. 406, 409 n. 3, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), Connecticut's Supreme Court has itself recognized in State v. Annunziato, 154 Conn. 41, 221 A.2d 57 (1966), and State v. Vars, 154 Conn. 255, 224 A.2d 744 (1966), that it was bound to follow *Griffin* in cases (such as Amaio's) on appeal on the date of that decision. Consequently, in both *Annunziato* and *Vars* new trials were ordered on the sole ground that the jury charges in those cases, also based on Connecticut's rule, were erroneous. Furthermore, the Supreme Court of Connecticut, relying upon O'Connor v. Ohio, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189 (1966), expressly held in *Vars*, 154 Conn. at 271–272, 224 A.2d 744, that the failure to take an ex-

---

1. In his direct appeal to the Supreme Court of Connecticut, Amaio fully presented this claim and the other which he raises here. It follows that he has exhausted state remedies. United States ex rel. DeNegris v. Menser, 247 F.Supp. 826, 828–829 (D. Conn.1965), aff'd, 360 F.2d 199 (2d Cir. 1966). The evidence presented at the hearing on this petition was all documentary; it consists of the printed record on appeal, the transcript of the proceedings at trial, including the charge to the jury (except for counsel's closing arguments to the jury), and also the respective briefs filed before the Supreme Court of Connecticut.

ception to such a charge given before the date of *Griffin* would not bar the assertion of the claim on appeal.

However, in rejecting Amaio's identical claim of error, the Supreme Court of Connecticut distinguished it from both *Annunziato* and *Vars* sub silentio, stating:

> "The record discloses, however, that the court clearly emphasized to the jury that the portion of the charge relating to Licari's failure to testify was requested by Licari and was to be applied to him. Since, in addition, Amaio not only took no exception to that portion of the charge but also concedes that the jury were correctly charged as to his own failure to testify, we find no harmful error." 254 A.2d at 485.

These two short sentences state two separate grounds, each of which is considered separately.

### I. Parties Affected by the Charge

■ The argument stressed most heavily by the state is that since the trial court told the jury that the charge was given at the request of Licari, the jury must have understood that it was to be limited only to the case against Licari.

As given at the trial, the charge on the effect of the failure of a defendant in a criminal case to testify did not state that its application was limited to the case against the defendant Licari. The charge related generically to "[a]n *accused person* * * *.*" (Emphasis added). At this trial, Amaio and Licari were both accused persons neither of whom testified. The state's attorney argues that the jury could not reasonably have understood that this part of the charge was to be applied generally to all of the defendants who had not testified. Taking the charge as a whole, he calls attention to the fact that the judge gave particular instructions referring to each defendant separately, and mentioned

their individual names several times. It is true that the charge was to some extent "compartmentalized." The charge began with general instructions on criminal law and the particular crime, applicable to all defendants. The court then gave instructions applicable to DiBella alone, relating to his purpose in paying the policeman, entrapment, and character evidence. It then gave a charge applicable to Amaio, regarding knowledge and acquiescence in the conspiracy. It then gave the charge in issue. The court followed with a few more instructions of general applicability, including an admonition to consider each defendant separately.

If the limited instruction on the failure of an accused to testify requested by Amaio (the portion in brackets, *supra)* had been given during the portion of the charge relating to Amaio, there would be a colorable basis for the respondent's argument. But a reading of the charge discloses that what is quoted above is the only instruction in the entire charge on the legal effect of the failure of an accused person to testify. The respondent does not take the position that no charge at all was given on this point with respect to Amaio. Nor could it fairly make such a claim, because the finding which the trial judge made specifically for the record on appeal states: "The defendant Alfred J. Amaio did not testify. At his request in writing, the court charged the jury as follows: [here follows the portion in brackets, *supra*].*" Record at 105. The transcript, however, reveals that, in fact, only the charge requested by Licari was given. That the single charge may have been intended to serve as a compliance with both requests, as may be inferred from the trial judge's finding, is understandable in view of the fact that Amaio's request was identical to part of Licari's. But if the trial judge intended only that portion of the charge which both defendants had requested to serve a double duty,[2] he never instructed the jury to that effect. There

---

2. At the time of the trial there was no reason why he should have made any dif-

ferentiation between Amaio and Licari on this point of Connecticut's law.

is nothing to suggest that the jury, unaided by the judge, discriminately applied but one portion of the charge only to Licari.

Even if there was a semantic basis for the contention that the offending portion of the charge was to be applied only to Licari, it does not follow that error would have been avoided. Although Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968),[3] is rested on the right of cross-examination secured by the confrontation clause of the sixth amendment, it has drastically curtailed the scope of the doctrine that evidence appropriate for jury consideration against one co-defendant in a criminal case but improper as to another can be cured by cautionary instructions. While it may be possible to verbalize an instruction that an adverse inference may be drawn against one defendant from his failure to testify in his own behalf, but not against a co-defendant who likewise failed to testify, there is little doubt that the reason underlying any such instruction would likely be so incomprehensible to ordinary jurors as to impose an undue hazard to the fair functioning of the jury system. The reasons why limiting instructions are unreliable safeguards against the risk of a jury's impermissible use of prejudicial evidence were fully elaborated in *Bruton*, particularly 391 U.S. at 129–137, 88 S.Ct. 1620, and there is no need to reiterate them here. The charge was erroneous as to both Licari and Amaio.[4] The next question is whether that error as to Amaio can be regarded as harmless.

## II. *Harmless Error*

The asseveration by the Supreme Court of Connecticut that "we find no harmful error" because " * * * Amaio not only took no exception to that portion of the charge but also concedes that the jury were correctly charged as to his own failure to testify" suggests that the reasons given are woven into a pattern of waiver. Such a view is, of course, clearly out of date in light of recent cases. Whether the defendant was barred from raising the claim that the charge was harmful, and whether it was in fact harmful, are two separate questions, and there is no correlation between the two.

As already noted, State v. Vars, 154 Conn. 255, 271–272, 224 A.2d 744 (1966), squarely held that under circumstances as exist here, the failure to take an exception was not a bar to an appeal. The *Vars* court followed O'Connor v. Ohio, 385 U.S. 92, 93, 87 S.Ct. 252, 253, 17 L.Ed.2d 189 (1966), where the per curiam opinion of the Supreme Court of the United States held:

> "Defendants can no more be charged with anticipating the *Griffin* decision than can the States. * * * Thus, his failure to object to a practice which Ohio had long allowed cannot strip him of his right to attack the practice following its invalidation by this Court."

Nor did Amaio concede that the jury was correctly charged as to his own failure to testify. A concession that part of the charge was correct was not a concession that all of it was. Because he conceded that the first three sentences of the instructions requested by both Licari and himself were correct, he did not thereby concede that the immediately following qualifications vitiated by *Griffin* were also correct. That such a limitation of the concession emerges from a logical reading[5] is strengthened by the rule that important constitutional rights may not be waived other than under federal standards. See United States ex rel. Holloway v. Reincke, 229 F.Supp. 132, 139 (D.Conn.1964); *cf.* Henry v. Missis-

---

3. *Bruton* was held to be retroactive in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).

4. Whether Licari would have been barred from challenging it because he requested it is beside the point. Unlike *Bruton* where the co-defendant's confession was clearly admissible against the co-defendant, here the state was not entitled to the charge requested by Licari, even against Licari.

5. *See* Exhibit B at 13 (Amaio's Brief on Appeal to the Connecticut Supreme Court).

sippi, 379 U.S. 443, 447, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). Those standards do not include waiver by implication.

■■ Since the error was not waived, what then was the basis for finding it harmless? Whether the error was harmless must be determined by application of the test laid down in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), where the test first enunciated in Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), was reaffirmed, to wit: "[W]hether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." 386 U.S. at 23, 87 S.Ct. at 827. Furthermore, the burden is on "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. at 24, 87 S.Ct. at 828.

Although not discussed in the opinion affirming Amaio's conviction, the respondent puts forth the argument here that because Licari was acquitted, the error in the charge must have been harmless as to Amaio.

■ This argument is less impressive than it sounds. It is not supportable either in law or logic. "It has been held many times that inconsistency in verdicts does not require the result contended for by appellants. And this is true even though the inconsistency can be explained by no rational considerations." AMA v. United States, 76 U.S.App.D.C. 70, 130 F.2d 233 (1942), aff'd, 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. 434 (1943); accord, United States v. Lester, 363 F.2d 68, 74 (6th Cir. 1966), cert. denied, 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967); United States v. Austin-Bagley Corp., 31 F.2d 229 (2d Cir.), cert. denied, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002 (1929); Steckler v. United States, 7 F. 2d 59, 60 (2d Cir. 1925); cf. Carrano v. S. Cinque & Sons, 128 Conn. 104, 106, 20 A.2d 615 (1941).

Furthermore, a rational basis can be found for the verdict in Licari's favor. Licari was to run a crap game under the aegis of the conspirators. The object of the conspirators was to buy protection for several gambling operations they ran. The jury could well have decided that Licari would be a beneficiary of a successful arrangement with the police, but was not a party to the group trying to make such an arrangement. The bare fact that Licari was acquitted does not prove that the jury did not draw any inferences against Amaio from his failure to take the stand.

Leaving the realm of the hypothetical to enter that of the possible, as required by Chapman v. California, 386 U.S. at 24–26, 87 S.Ct. 824, I turn to the entire record. The evidence at trial that Amaio was a knowing member of the conspiracy to obtain police protection for future gambling operations consisted of his driving DiBella to a place where DiBella met with Detective Reynolds, of the West Hartford Police Department, out of Amaio's presence. DiBella had previously told Amaio that the purpose of the meeting was to pay Reynolds some money in order to get Reynolds to have nullified criminal charges, unrelated to the conspiracy, then pending against Licari, due to a "moral obligation" that DiBella felt. To this Amaio replied that DiBella was "crazy" and that DiBella should not get involved with the police.

On another occasion about three weeks later, during a meeting at a restaurant between DiBella, Detective Reynolds, and Sgt. Ahern, of the New Haven Police Department, after DiBella had paid Reynolds $800, DiBella asked the officers if Amaio could come over. When they said yes he telephoned to Amaio. Amaio arrived later and joined the others. There was no talk thereafter about any illegal plans while Amaio was present. Finally, early one morning during the trial, Amaio and DiBella were seen sitting together in a car, apparently talking.[6]

6. This could hardly have been in furtherance of the conspiracy at that time.

The presence of Amaio with DiBella on two occasions so near in time and place to DiBella's actions in pursuing the purposes of the conspiracy might be regarded as sufficient to establish something more than a suspicion that Amaio was involved. Compare United States v. Cappabianca, 398 F.2d 356, 360 (2d Cir.), cert. denied, 393 U.S. 935, 89 S.Ct. 294, 21 L.Ed.2d 271 (1968). In addition, there was also testimony from Detective Reynolds that Guglielmo had told him that Amaio was "a stand up fellow" and was involved in the object of the conspiracy. He also testified that DiBella had said, "Freddie Amaio is ready to go and is really hot about the thing." These were statements in furtherance of the conspiracy made by declarants who were members of the conspiracy, both of whom were available for cross-examination (they testified at the trial). While this was all only circumstantial or hearsay evidence that Amaio was a member of the conspiracy, it was sufficient under the charge to force him either to volunteer an explanation, which would require him to abandon his right to remain silent, or to suffer a substantially increased risk of an adverse verdict. *Cf.* United States ex rel. Walls v. Mancusi, 406 F.2d 505 (2d Cir. 1969). It was, moreover, evidence tending to link him to the conspiracy, which made an especially strong call for an explanation from Amaio. *Cf.* Krulewitch v. United States, 336 U.S. 440, 453–454, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (Jackson, J., concurring).

In applying the harmless-error rule to a case where the error was not one of constitutional dimensions, the Supreme Court said in Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946):

"But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

In this case the error was not limited to the admission of a single item of the evidence against Amaio—the charge concerning the failure to take the stand opened the door to impermissible inferences from all of the evidence.

It can be said with assurance that there is a reasonable possibility that instructing the jury that they were permitted to infer his guilt from one's failure to testify contributed to Amaio's conviction; I conclude with even more assurance that the state has not satisfied its heavy duty to prove beyond a reasonable doubt that it did not. See Chapman v. California, 386 U.S. 18, 26, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966). Compare Fontaine v. California, 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968). The error in the charge was not harmless.

In view of this conclusion, the remaining ground advanced by the petitioner need not be considered.

The writ is sustained, and it is

Ordered that the petitioner be discharged from custody unless, within twenty (20) days from the date of this opinion and order, the State of Connecticut vacates the judgment of conviction, reinstates petitioner's plea of not guilty, and schedules an early retrial.

This order will be stayed to allow for an appeal by respondent, if one is taken. The petitioner's admission to bail by this court is continued under the same bond. To obviate any further delay this court hereby grants the certificate of probable cause required by 28 U.S.C. § 2253.