**Chester BROWN**

v.

**Frederick ADAMS, Warden, Connecticut Correctional Institution.**

**Civ. No. 14269.**

United States District Court, D. Connecticut.

March 29, 1971.

Chester Brown, in pro. per., Igor I. Sikorsky, Jr., Hartford, Conn., for plaintiff.

Arlen D. Nickowitz, Asst. State's Atty., Bridgeport, Conn., for defendant.

## MEMORANDUM OF DECISION ON PETITION FOR A WRIT OF HABEAS CORPUS

BLUMENFELD, District Judge.

### I.

This case is before the court on an application by Brown for a writ of habeas corpus to secure his release from the Connecticut Correctional Institution. He is there serving a state sentence imposed after his conviction on September 29, 1961, in the Connecticut Superior Court on a charge of rape. He challenges his conviction on the ground that his constitutional rights were violated at trial by instructions to the jury that it could draw adverse inferences from his failure to testify, contrary to the rule first enunciated in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). That case was decided after Brown was tried but before his appeal was heard.[1] His conviction was af-

---

1. Although Brown's initial attempt to appeal within the statutory period was frustrated, he later won the right to appeal in state habeas corpus proceedings. The state Superior Court first granted Brown a right to appeal in a habeas corpus pro-

firmed. State v. Brown, Conn., 32 Conn. L.J. No. 32, at 1 (Feb. 9, 1971). The sole issue here is the same as that raised in the state appeal; namely, whether the rule of Griffin v. California, *supra,* should be applied to petitioner's case to void his conviction.

## II.

■ Since Brown raised that precise issue on direct appeal to the Connecticut Supreme Court, he has sufficiently exhausted state remedies for purposes of federal habeas corpus. 28 U.S. C. § 2254(b); United States ex rel. West v. LaVallee, 335 F.2d 230, 231 (2d Cir. 1964). He is not required to seek certiorari in the United States Supreme Court. Fay v. Noia, 372 U.S. 391, 437– 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The comity considerations underlying the doctrine of exhaustion having been satisfied, a federal court may not thereafter decline habeas jurisdiction. Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (per curiam); United States ex rel. Sniffen v. Follette, 393 F.2d 726 (2d Cir. 1968). The duty of this court to reconsider the same issue passed upon by the Connecticut Supreme Court inheres in the distribution of power to a federal court to grant a writ of habeas corpus to state prisoners, 28 U.S.C. § 2241(a),[2] and whatever impact on the tender areas of the relations between federal and state courts this may bring about cannot be avoided.

As Mr. Justice Frankfurter noted in Brown v. Allen, 344 U.S. 443, 499, 73 S. Ct. 397, 442, 97 L.Ed. 469 (1953):

"Congress could have left the enforcement of federal constitutional rights governing the administration of criminal justice in the States exclusively to the State courts. These tribunals are under the same duty as the federal courts to respect rights under the United States Constitution. (Citations omitted) * * * It is not for us to determine whether this power should have been vested in the federal courts. As Mr. Justice Bradley, with his usual acuteness, commented not long after the passage of that Act, 'although it may appear unseemly that a prisoner, after conviction in a state court, should be set at liberty by a single judge on *habeas corpus,* there seems to be no escape from the law.' Ex parte Bridges, 2 Woods (5th Cir.) 423, 432."

## III.

The United States Supreme Court dealt directly with the applicability of the *Griffin* rule in Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S. Ct. 459, 15 L.Ed.2d 453 (1966), and O'Connor v. Ohio, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189 (1966) (per curiam). In *Tehan,* the Court declined to apply *Griffin* retrospectively to cases which had passed the stage of finality, but noted that there was no question

---

ceeding in 1965, Brown v. Warden, Dkt. No. 142134 (Super.Ct.Htfd.Cty., June 10, 1965). An appeal taken pursuant to that order, after some intervening habeas corpus petitions in the federal court, was dismissed by the state Supreme Court in 1969 on the ground that the trial court was without authority to grant a late appeal. State v. Brown, 157 Conn. 398, 254 A.2d 570 (1969). The dismissal was without prejudice to Brown to seek by state habeas corpus a determination that he was unconstitutionally denied a right to appeal. The Superior Court, on Brown's subsequent habeas corpus petition, held that the state had acted unconstitutionally in barring his attempted ap-

peal. Brown v. Warden, Dkt. No. 160195 (Super.Ct.Htfd.Cty., July 5, 1969). His appeal was thus finally heard by the state Supreme Court more than eight years after he was convicted.

2. Section 2241(a) provides in part:
"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions * * *."
Section 2241(c) limits federal habeas corpus jurisdiction over a state prisoner to cases where "(3) He is in custody in violation of the Constitution or laws or treaties of the United States."

that it applied "to cases still pending on direct review at the time it was announced. Cf. O'Connor v. Ohio, 382 U.S. 286 [86 S.Ct. 445, 15 L.Ed.2d 337]" 382 U.S. at 409 n. 3, 86 S.Ct. at 461. In reversing O'Connor's conviction when it came up again after having been remanded "for further proceedings in light of" *Griffin*, 382 U.S. at 286, 86 S. Ct. at 445, the Court said: "[I]n *Tehan* we cited our remand of petitioner's case as evidence that *Griffin* applied to all convictions which had not become final on the date of the *Griffin* judgment." 385 U.S. at 93, 87 S.Ct. at 253. At the time of Brown's appeal, therefore, the rule was clear.

Three times before the petitioner's case was heard on direct review, the Connecticut Supreme Court had complied with *O'Connor* to hold that the *Griffin* rule applied to cases pending on "direct review," State v. Wilkas, 154 Conn. 407, 225 A.2d 821 (1967); State v. Vars, 154 Conn. 255, 224 A.2d 744 (1966); State v. Annunziato, 154 Conn. 41, 221 A.2d 57 (1966). Cf. United States ex rel. Amaio v. Reincke, 300 F.Supp. 367 (D. Conn.), aff'd, 416 F.2d 1333 (2d Cir. 1969). However, despite its acknowledgment that Brown's conviction was not final, it held that *Griffin* did not apply to his case and affirmed his conviction. To support its decisive shift from those cases, it did not offer a different reading of the controlling opinions of the United States Supreme Court, but rather concluded that:

> "although it does not appear that the second *O'Connor* case [385 U.S. 92, 93 [87 S.Ct. 252, 17 L.Ed.2d 189]] has been expressly overruled, nevertheless the United States Supreme Court would not follow that decision today in determining the applicability of the *Griffin* rule. Furthermore, application of the retroactivity tests prescribed by that court in Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed. [2d] 1199, all result in persuasive arguments against the applicability of that rule to the present case." 32 Conn.L.J. at 4 (footnote omitted).

The Chief Justice concurred on the ground that the United States Supreme Court in *O'Connor* did not have "in contemplation a case such as the present one in which an unexercised right of appeal was revitalized in an independent proceeding eight years after the judgment had apparently become final."[3] Only Justice Cotter dissented, commenting: "I see no justification for a different reading of *O'Connor*, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189, than that contained in the original opinion." 32 Conn.L.J. at 6.

■ I abstain from an unproductive discussion of what the Supreme Court would be likely to decide if it were to reconsider the question.[4] The Supreme

---

3. No such avenue for avoiding a head-on clash with *O'Connor* is suggested in any decision of the Court. There is no support for the view that a court may apply a different test to two persons simply on the basis of a quantitative difference in the time it takes for their appeals to be heard. The only controlling reality is that Brown's conviction had not become final. *See* footnote 1, *supra*.

4. The state Supreme Court suggested that *O'Connor* might be classed with those occasional Supreme Court cases so eroded by its subsequent opinions as to foretell the likelihood of their being overruled. Whether a different result is likely to be reached by the Supreme Court *if* it were to reconsider the *O'Connor* rule at some later time is one question; whether it is likely to reconsider that question in the future is another. It may not be amiss to point out that that is extremely unlikely to happen. It is doubtful that a decision of the Court arrived at after such careful deliberation in 1966 would be regarded as so eroded by 1971 that the Court would entertain the same question.

The importance which the Supreme Court attached to the question in *Tehan* was emphasized by its request to the parties when certiorari was granted "to brief and argue the question of the retroactivity of the doctrine announced in Griffin v. California * * *." 381 U.S. at 923, 85 S.Ct. at 1560, 14 L.Ed.2d 683. And its fully reasoned opinion in 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 re-

Court's interpretation of *Tehan* in the second *O'Connor* case as holding that "*Griffin* applie[s] to all convictions which had not become final on the date of the *Griffin* judgment," 385 U.S. at 93, 87 S.Ct. at 253, is binding on this court.[5] And there is no question that Brown's conviction was not final at the time *Griffin* was decided.

Since existing rulings of the United States Supreme Court must be followed by inferior courts "instead of forecasting that [they] will be changed when the matter is again considered by the Court," Lichter Foundation, Inc. v. Welch, 269 F.2d 142, 145 (6th Cir. 1959); Dyer v. Commissioner of Internal Revenue, 211 F.2d 500, 506 (2d Cir. 1954), we cannot wipe out *O'Connor* and begin all over again. Any departure from that rule would have to come from the Supreme Court. United States v. One 1956 Ford, 272 F.2d 704, 705 (10th Cir. 1959). "[A]ll inferior federal courts as well as all state courts, inferior or appellate, are bound by the determinations of the Supreme Court as the final law of the land." United States v. American Radiator & Standard Sanitary Corp., 278 F.Supp. 241, 251 (W.D.

Pa.1967). *Cf.* Nielsen v. Turner, 287 F.Supp. 116 (D.Utah 1968) ("* * * an issue involving a proper explanation or waiver of a federal constitutional right is a federal question on which Supreme Court decisions are binding both upon federal and state courts.") Miller v. Boles, 248 F.Supp. 49, 51 (N.D.W.Va. 1965), overruled on other grounds Sheftic v. Boles, 377 F.2d 423, 426 (4th Cir. 1967); Stonebreaker v. Smyth, 163 F. 2d 498 (4th Cir. 1947).

### IV.

To recapitulate, in the limited area of federal habeas corpus jurisdiction, this court is constrained to independently rule on federal constitutional issues even though a state appellate court has passed on them. With the Supreme Court of the United States at the highest level of authority in an integrated order of our judicial system, all lesser federal courts and all state courts must be governed by the standards or directions of the Supreme Court. This authority over state courts to effectively enforce federal law may be viewed as embodied in the supremacy clause.[6]

flects an acute awareness of its self-imposed "obligation to lower courts to decide cases upon proper constitutional grounds in a manner which permits them to conform their future behavior to the demands of the Constitution." Sibron v. New York. 392 U.S. 40, 59, 88 S.Ct. 1889, 1900, 20 L.Ed.2d 917 (1968).

Furthermore, since the *Griffin* rule was not made retroactive to cases already final, this is perhaps the last, certainly one of the last few, cases tried before *Griffin* (1965) and still on direct review, which could serve as a vehicle for the Court's reconsideration of the rule in *O'Connor*.

5. This is not an empirical concept, but a juridical principle applicable to all appellate review. In The Peggy, 5 U.S. (1 Cranch.) 102, 108–109, 2 L.Ed. 49 (1801), the Court explained:

"It is, in the general, true, that the province of an appellate court is only to inquire whether a judgment, when render-

ed, was erroneous or not. Buf if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. * * * In such a case, the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed, but in violation of law, the judgment must be set aside." (footnote omitted).

*Cf.* United States v. Estate of Donnelly, 397 U.S. 286, 296, 90 S.Ct. 1033, 25 L. Ed.2d 312 (1970) (concurring opinion of Mr. Justice Harlan).

6. In holding that the Georgia courts must enforce the rule of criminal procedure governing the introduction of confessions in criminal trials which it had held in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), to be constitutionally mandated, the Supreme

The conclusion that the petitioner's constitutional rights were violated at his trial and that this error should have been corrected on direct review is inescapable.

The writ is granted, and it is

Ordered that petitioner be discharged from the respondent's custody unless within twenty (20) days the State of Connecticut vacates the judgment of conviction and schedules an early retrial.

Court stated in Sims v. Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967):

"Such rule is, as we have said, a constitutional rule binding upon the States and, under the Supremacy Clause of Article VI of the Constitution, it must be obeyed."